THE PEOPLE *v.* THE SUPERVISORS OF LIVINGSTON COUNTY

Money which has come to the hands of a county treasurer from a state tax cannot be said to be lost while an action therefor against the sureties on his official bond is pending, execution against the property of the treasurer having been returned unsatisfied.

Until a loss has actually been sustained by the default of a county treasurer to pay over the proceeds of a state tax, the board of supervisors is not required by the statute (*ch.* 298, *of* 1850) to levy a new tax for the sum retained by him.

APPEAL from the Supreme Court. Mandamus to compel the board of supervisors of Livingston county to assemble and cause to be raised the sum of $28,444.92 upon the taxable property of that county, to make up an alleged loss to the state treasury to that amount, sustained by the default of the county treasurer. The alternative writ was issued in May, 1857.

By the return of the board to the writ, it appeared that the treasurer had made default in paying into the state treasury the sum mentioned, a part of which had been received by him on account of the state tax of 1855, and the residue for that of 1856; that a suit had been prosecuted to judgment in the name of the people against the county treasurer, upon which a *fieri facias* had been returned unsatisfied, and that he was now in jail on a *ca. sa.*, issued upon that judgment. It also appeared that an action had been commenced against the treasurer and his sureties, upon his official bond, given to the board of supervisors, and that the same was at issue and still pending, and had not been tried. The board of supervisors took the ground, in their return, that the loss had not been ascertained, and that they were not, in the present state of the affair, required to levy the amount upon the tax payers of the county. The attorney-general demurred to the return, and the defendants, the board of supervisors, joined in demurrer. The Supreme

Court gave judgment for the people, and awarded a peremptory mandamus against the defendants. After an affirmance, at a general term, the defendants brought this appeal.

*Scott Lord*, for the appellants.

*Lyman Tremain*, attorney-general, for the people.

DENIO, J. The provision relied upon by the attorney-general is found in a statute passed in 1850 ( *ch.* 298, § 25 ), and is as follows: "All losses which may be sustained by the default of the collector of any town or ward, shall be chargeable on such town or ward. *All losses which may be sustained by the default of the treasurer of any county, in the discharge of the duties imposed by this act, shall be chargeable on such county;* and the several boards of supervisors shall add such losses to the next year's taxes of such town or county." At the time of the issuing of the alternative mandamus, the county authorities were prosecuting the treasurer and his sureties, on his official bond, and it had not been ascertained whether that prosecution would result in the recovery of the moneys which had been embezzled by the treasurer or not. *Prima facie*, the security which had been exacted of the treasurer will be assumed to be sufficient for the purpose for which it was taken, and we are not to presume that it will be found unproductive of the proper result. The recovery of the money, as we must suppose, in the absence of any evidence to the contrary, is only a question of time. We are, therefore, of opinion that the money cannot be said to be lost, while the means provided by law for securing its payment, are being enforced in the ordinary course of justice. A debt cannot properly be said to be lost while the creditor is prosecuting a surety for its recovery. The statute does not authorize the money to be collected a second time from the tax payers, unless a loss has actually resulted from the delinquency of the treasurer.

This view is strengthened by the other arrangements of the statute. If the treasurer fail to pay over the money which he has received on account of the state tax, two remedies are provided to recover it. The attorney-general is to prosecute the treasurer to judgment for the amount for which he is in default; and the comptroller may, in his discretion, direct the board of supervisors to institute a suit or suits against the treasurer and his sureties. Where the deficit is small and the treasurer is responsible, the former remedy will generally be adequate; but under other circumstances it may be desirable to put in exercise all the remedies which the law has provided, either successively or together. In the present case, the personal action against the treasurer has proved ineffectual; but, until the prosecution against the sureties has been carried to judgment and execution, it cannot be said that the debt is lost.

It is not a correct view of the matter to say that the purpose of the treasurer's bond was only to indemnify the county. It is conditioned, among other things, to render a just and true account to the comptroller of the state, when thereunto required (1 *R. S.*, 369, § 18), and that officer, as we have seen, may direct its prosecution; and when a recovery shall be had, if any of the moneys for which the judgment was recovered were received by the treasurer for the use of the state, which of course embraces the moneys levied for the state tax, the supervisors are required to pay such moneys to the treasurer of the state. (*Id.*, §§ 27, 28.) This provision shows that the bond is one of the means provided for the security of the state, and that it is not limited to the object of indemnifying the county. It is also very significant to show that it was not contemplated, by the legislature, that the state tax which a county treasurer had neglected to pay over was to be levied upon the tax payers before the carrying into effect of the judgment upon the bond; for if it had been otherwise, a provision would have been made, that the portion of the recovery which

was on account of the moneys received for the state tax should, when the state treasury had been satisfied by the proceeds of the second tax, be applied to the use of the county.

The judgment of the Supreme Court must, therefore, be reversed, on the ground that it is not yet determined that the money which is to be replaced by the new tax has been lost, and there must be a judgment for the defendants, on the demurrer.

All the judges, except ROOSEVELT and HARRIS, concurring,

Judgment reversed.