The principal question to be considered is, whether the defendant was liable to Messrs. Hicks Hathaway, the drawees, and acceptors of the bill of exchange in this case after they had paid the same at its maturity to the holders. It is not contended by any one that either the principal drawer, L.B. Garlinghouse, or either of the other two persons who signed it, are liable on the bill as a written contract. *Page 541 
According to the legal effect of that instrument, the acceptors were the parties primarily liable, and the drawer could never be liable to them — his undertaking being limited to a contract to pay the contents of the bill to the holder upon default being made by the acceptors, and due notice being given to the drawer. It is quite unnecessary to enlarge upon the character of a bill in this aspect of it, as it lies at the foundation of the law of bills of exchange, and has never been disputed by any counsel or judge in the cases which have arisen respecting the liability of one who had become a drawer or surety for the principal drawer of a bill. It is, however, well-settled law that the acceptor of a bill, who accepted and has paid it at the request of and for the accommodation of another person can maintain an action against such other person for money paid to his use at his request; and this is so whether the person so accommodated is a party to the bill or not. To hold this is saying no more than that one paying money for the benefit of another, pursuant to his request or direction is entitled to have it refunded, and can maintain an action if such duty be not performed. Where the payment has been made according to the exigency of commercial paper drawn on the party paying for the benefit of the other party, such paper may furnish a necessary part of the evidence to maintain the action; but the contract itself does not inhere in the paper, but exists outside of it, and is in apparent contradiction to it. It is impossible that there should be any controversy or any difference of opinion respecting these general principles. It follows that the defendant was never liable and never could be made liable to the drawees and acceptors of this bill on the bill itself. But if they have advanced money for his use at his request, he was liable to repay it upon the most common principles of the law.
The particular question in this case, then, is, whether the formal request contained in the bill which the defendant signed as the surety of the principal drawer, L.B. Garlinghouse, connected with the facts offered to be shown that L.B. Garlinghouse had dealings with the acceptors, and that, in the *Page 542 
course of such dealings, they had agreed with him to accept and pay his bills without funds at the time, in hand, to reimburse them and had accepted and paid this bill, furnishes evidence in law, of money paid to the use of the defendant. I think it does not. The arrangement dehors the bill was one to which the defendant was a stranger. He never desired the acceptors to advance money for him: he never had any dealings with them, and never had any transactions of any kind with them except to join as a drawer in the bill as the surety of the principal drawer, who actually had these dealings and to whom they had agreed to loan money by paying his bills. It is idle to say that the bill contained a request to pay money for his use which he was to repay, while those who urge that position are obliged to admit that the import of the bill itself after acceptance, is that the acceptors bound themselves to pay money which they themselves owed to the drawers. I should think that upon principle, and according to all legal analogies these considerations would be conclusive in favor of the defendant. But we are to ascertain how the question stands upon authority, and I am free to admit that upon this class of questions it is peculiarly unsafe to depart from a settled course of adjudication, whatever opinion we might entertain of a particular position if it were res nova.
In Griffith v. Reed (21 Wend., 502), a case was presented in its essential features precisely like the present. One Dixon was the principal drawer of the bill, and he had had dealings with the plaintiffs, the drawees, of the same kind as those offered to be proved in this case, and he was accustomed to draw on them and to have his bills accepted and paid with out having funds in their hands. The defendant, Reed, subscribed his name to the bill then in question under that of the drawer, adding thereto the word "surety." The form of the bill, like the one in the present case implied that the principal drawer was alone interested in the money which the bill represented. The drawees were to charge the amount to his account and not to the account of both drawers generally. The plaintiffs accepted and paid the bill and brought their *Page 543 
action against both drawers, and it was held that Reed, the surety, was not liable. I refer to the reasoning of Mr. Justice BRONSON, who prepared the opinion of the court, as a full exposition of the principles which appear to me to apply to the case, and to which I am unable to add anything material. If this case has not been overruled, it is quite decisive of the one before us. But it is argued that the doctrine has been reconsidered and decided the other way in the Court for the Correction of Errors, in Suydam v. Westfall (2 Denio, 205;S.C. in the Supreme Court, 4 Hill, 211). The facts in the two cases are in many respects similar. But they differed in some important particulars. Westfall did not sign the bill in form as the surety with Norton, Bartle McNeil, the other drawers, though it was proved that he was in point of fact a surety for them; and the bill on its face purported to be drawn on account of all the defendants. A plural word was used, in indicating to whom the money should be charged, which would embrace all who signed the paper. Again, the plaintiffs, the drawees required sureties for the advance, or at least it was understood by the court that they annexed that condition to their agreement to accept, for just before the date of the bill they wrote to Mr. Cook, who became the holder, and who was the cashier of the bank which was expected to and did discount it, that they had authorized Norton, Bartle McNeil to draw, but stated that the drafts must be undersigned by such persons as the cashier considered responsible. They, no doubt, assumed that all the drawers would be liable to repay the overdrafts.
The Supreme Court did not consider that these circumstances distinguished the case from Griffith v. Reed, and acquitted the surety as they had done in that case. This judgment was reversed by the Court of Errors, but not, as I think, upon the ground that the former case of Griffith v. Reed had been wrongly decided. I may remark in the first place that the able counsel for the plaintiffs, Mr. George Wood and Mr. Bidwell, distinguished the case from Griffith v. Reed by the circumstances I have mentioned. They said the form *Page 544 
of the bill was different in that case. It contained, they said, a request to charge the amount to Dixon alone, and Reed added the word "surety" to his name, and they relied also on the circumstance that the plaintiffs required and obtained an additional name. Opinions were delivered by two Senators — BOCKEE and FOLSOM — for reversal, and by Senator PORTER for affirmance. No reference was, in terms, made to Griffith v. Reed in the prevailing opinions. Indeed, that case is not mentioned in them. But both the senators rely upon the form of the bill. Senator BOCKEE said that "the act of Westfall in signing his name as one of the drawers of the bill requesting and directing the plaintiffs to pay $1,000 to the order of C.A. Cook, and to charge the sum to the account of the drawers, is sufficient in law to make the defendant responsible," c. Westfall, he said, had placed himself under the same legal liabilities both in substance and in form. He relied also strongly upon the letter of the plaintiffs making it a condition to the acceptance that other responsible names should be added as drawers, from which he inferred that the plaintiffs would not otherwise have made the advances. Senator FOLSOM also laid great stress upon these circumstances in which the cases are dissimilar. He said there was nothing on the face of the draft which placed Westfall's undertaking in a different light from his co-drawers, and that the manner in which his name appeared upon it did not leave such an idea. The word "surety," he remarked, was not appended to it, and the amount to be paid "is directed to be charged to his account as well as that of his co-drawers. This was not done to obtain credit at the bank, but to meet the express condition of the letter of credit, which Westfall must be presumed to haveseen, and inspire confidence in the drawees." Eighteen senators only were present at the giving of judgment, ten of whom were for reversal and eight for affirmance, the Chancellor not being present. If the two senators who seem to me to have put the case very much upon grounds which distinguish it from Griffith v.Reed, had voted the other way, as possibly they might but for the distinguishing circumstances, *Page 545 
the judgment of the Supreme Court would have been affirmed. I cannot consider the case as really overruling the former one. It is not necessary to affirm the soundness of the alleged distinctions, or to determine that the evidence really presented all of the facts supposed by the senators to have been proved. It is enough to dispose of the case as authority to show that the judgment was placed upon grounds which would not disturb the prior decision. We cannot sustain this action without overturning two rules of law so well settled as to be considered elementary; first, that the drawers are not liable to the drawees who have accepted and paid the bill upon the bill itself; or for money paid to the use of the drawers except by force of some independent arrangement (and the present defendant is not shown to have been a party to any such arrangement;) second, that a surety is never liable except according to the legal effect of the contract signed by him. The defendant by signing this bill put himself in the position of a drawer. His adding the word "surety" does not, it is true, relieve him from the responsibility of that position. But when it is attempted to charge him as the borrower of money, or as a party requesting the plaintiffs to accept for accommodation, there must be evidence showing that he had assumed such a relation. The bill does not afford any such evidence and the other proof does not affect him. We place this judgment wholly upon the form of the instrument, and upon the consideration that there is no evidence connecting the defendant with any contract, agreement or arrangement, other than the one appearing upon the bill. If it can be shown on another trial that the defendant agreed to become a surety for the purpose of enabling L.B. Garlinghouse to procure an advance of money from the drawees of the bill and signed the bill to effectuate that object, our objections to this recovery would disappear. In such cases the form of the paper and the liability which it prima facie imposes, are of no consequence. (Reynolds v. Wheeler, 10 Scott, N.S., 561.)
The judgment of the Supreme Court must be reversed and a new trial ordered. *Page 546 
DAVIES, WRIGHT, ROSEKRANS and BALCOM, Js., concurred — the latter for the additional reason that the plaintiff signed the draft without the knowledge or consent of the previous surety.