THE FIRST NATIONAL BANK OF BALLSTON SPA, Appellant, *v.* THE BOARD OF SUPERVISORS OF SARATOGA COUNTY, Respondent.

No person can make himself a creditor of another by voluntarily discharging a duty which belongs to that other; and no obligation can be implied in law from a voluntary payment of the debt of another, without his request, by one who is under no legal liability or compulsion to make it.

The proportion of the State tax levied upon a county and charged to its treasurer is payable by him; not as the officer or agent of the county but as an individual, designated by his official name for the performance of specific duties, and the county is not responsible for his omissions or defaults in respect thereto save in the manner prescribed by law.

In case of the failure or neglect of the county treasurer to pay over the taxes due the State, or to render an account thereof to the comptroller, it is not until the remedy against him and against his bail has been exhausted and the loss by reason of that default has been thus ascertained, that the county is required to act or any duty is attached to it. (Chap. 427, Laws of 1855, Chap. 393, Laws of 1863.)

M., a county treasurer, being in default in the payment of the State tax levied upon his county, executed two notes in his name of office purporting to be by authority of the board of supervisors, but without any actual authority from that body. These notes were discounted by plaintiff, the proceeds credited in the individual account of M. and paid out on his checks to the State treasurer to apply on his account with that officer. *Held*, that an action was not maintainable against the board of supervisors to recover the amount as for so much money had and received by the county for its benefit and use; that the indebtedness to the State discharged by the money procured from plaintiff, was not that of the county but of M.; but that conceding it to have been a county indebtedness, plaintiff, having voluntarily furnished M. with the means to discharge the debt without any request or promise to pay on the part of the county, did not thereby become its creditor, and no liability on its part was created.

*Newman* v. *Supervisors* (45 N. Y. 676, 687); *Bridges* v. *Supervisors* (92 id. 570), distinguished.

(Argued June 9, 1887; decided October 4, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 12, 1885, which affirmed a judgment

in favor of defendant entered upon a decision of the court on trial without a jury.

The nature of the action and the material facts are stated in the opinion.

*L. B. Pike* for appellant.   The debt paid by the treasurer, was the debt of the county of Saratoga. *Merch. Bk.* v. *Sup'rs,* 5 T. & C. 396, 397; 62 N. Y. 629; *Mayor, etc.* v. *Davenport,* 92 id. 604, 615; *Sup'rs* v. *Otis,* 62 id. 97; R. S. pt. 1, chap. 13; R. S. [Banks 6th ed.] 985, § 5; 45 N. Y. 686.)   The receipt of the money by the treasurer, and payment of it upon the indebtedness of the county, created a liability of the county to pay the debt thus incurred for its benefit. (*Bridges* v. *Sup'rs,* 92 N. Y. 570; *Hill* v. *Sup'rs,* 12 id. 52; *Dewey* v. *Sup'rs,* 62 id. 294; *Bk. of Comm.* v. *Mayor, etc.,* 43 id. 184; *Chapman* v. *Brooklyn,* 40 id. 372; *Ely* v. *Norton,* 3 Keyes, 397; *Hathaway* v. *Cincinnatus,* 62 N. Y. 447; *Gray* v. *Sup'rs,* 93 id. 608; *Baker* v. *Sup'rs,* 3 Week. Dig. 293; *Long* v. *Russell,* 45 N. Y. Super. Ct. 434; *Bell* v. *Boughton,* 2 Denio, 91; *Nelson* v. *Mayor, etc.,* 63 N. Y. 544; 2 Keyes, 202.)   The money having been procured from the bank upon unauthorized notes and by the financial officer of the county without authority, and a fraud thereby practiced upon the plaintiff by which it parted with its funds, which were appropriated by the county to its immediate benefit, the county cannot repudiate the fraud and keep the funds.   If it keeps the funds it must, upon its implied contract, pay the plaintiff. (*Nat. L. Ins. Co.* v. *Minch,* 53 N. Y. 144; *Cobb* v. *Dows,* 10 id. 345; *Graves* v. *Speir,* 58 Barb. 349; *Beverly* v. *Haight,* 92 N. Y. 51.)   Negligence on part of plaintiff, so long as it works no injury to defendant, avails nothing. (43 N. Y. 452; 40 id. 391; *Caussidiere* v. *Beers,* 2 Keyes, 202; *Wetmore* v. *Porter,* 92 N. Y. 81.)   Receiving the consideration of or otherwise deriving benefit from an unauthorized contract entered into on behalf of a principal by an agent, after full knowledge of the facts, operates as a ratification of the whole

contract by the principal, and makes the latter liable as fully to all intents and purposes as if direct authority had been originally given. (Story on Agency, § 239 *et seq.*; 2 Potter on Corp. 601, *n.* 23; *Bissell* v. *M. S. & N. I. R. R. Co.*, 22 N. Y. 258; *Nelson* v. *Mayor, etc.*, 63 id. 536; *Brady* v. *Mayor, etc.*, 20 id. 312; 5 Abb. [N. C.] 49, *note.*) The silence of the county until after suit; its conduct in receiving, appropriating and keeping the plaintiff's money, and in resisting its collection, constitute a ratification supplying the want of the delegation to Mann by the county, of the power the county clearly had to make the contract. (*Argenti* v. *San Francisco*, 16 Cal. 255; 63 N. Y. 544; Dillon on Mun. Corp. §§ 384, 750; Potter on Corp. § 508.)

*Charles S. Lester* for respondent. The loan in suit being made without the shadow of authority, and in direct violation of a statutory prohibition, no recovery can be had. (*Donovan* v. *Mayor, etc.*, 33 N. Y. 291; *McDonald* v. *Mayor, etc.*, 68 id. 23; *Smith* v. *Newburgh*, 77 id. 130; *Parr* v. *Vil. of Greenbush*, 72 id. 463; *Wellington* v. *Lawrence*, 73 Me. 125.) By neglecting his duty to pay over, and embezzling the funds, the county treasurer became personally liable, and the money borrowed of the bank thus paid his personal liability. (Laws of 1855, chap. 427, § 13; 3 Edmunds, 359; *Ætna Nat. Bk.* v. *Fourth Nat. Bk.*, 46 N. Y. 82; *Gray* v. *Sup'rs*, 26 Hun, 265; *Hart* v. *Bulkley*, 2 Edw. Ch. 70; *People* v. *City Bk. of Roch.*, 93 N. Y. 582; *People* v. *Merch. & M. Bk.*, 78 id. 269; *Com. Bk.* v. *Hughes*, 17 Wend. 94; *Marsh* v. *Oneida Co. Bk.*, 34 Barb. 298.) The loan made by the plaintiff to Henry A. Mann was a voluntary loan to a person who had no authority to borrow it for the defendant. Money advanced by a person under no restraint, compulsion or duress, cannot be recovered back. (*Com. Bk. of Rochester* v. *Rochester*, 42 Barb. 488; 2 Hun, 394.) The plaintiff could not make himself a creditor of defendant by voluntarily discharging a duty which belonged to defendant, even in case a duty did rest on defendant. (*Gould* v. *Phœnix*, 3 T. & C. 797;

*Ingraham* v. *Gilbert*, 20 Barb. 151; *Salsbury* v. *Phila.*, 44 Penn. St. 303; *Baltimore* v. *Poultney*, 25 Md. 18; *Jeffersonville* v. *Ferryboat*, 35 Ind. 19; *Inhabs. of S. Scituate* v. *Hanover*, 9 Gray, 420; *Bicknell* v. *Bicknell*, 111 Mass. 265.)

DANFORTH, J.   On the 1st of February, 1875, the State treasurer charged the "treasurer of the county of Saratoga" $76,960.51, being the State tax of 1874, as levied upon that county, and also with items of taxes canceled in that year amounting to $498.54.   On the 17th of May, 1875, there was credited on this account the sum of $10,000, which, with other payments not in question here, so reduced the account that on the third of June the balance due from the treasurer to the State was $32,624.18.   Henry A. Mann, was then and since February 1, 1873, had been treasurer of the county, and on the fourth of June, an action was brought by the attorney-general in the name of the People against him to recover this sum, as so much money belonging to the State which he had received and neglected to pay over.   On the seventeenth of June he paid, and the account was credited with $20,000, and subsequently judgment went against him in that action by default for $10,274.27, being the balance of the account first mentioned.   The plaintiff now sues the county of Saratoga to recover the sum of $10,000, which it alleges was advanced by it to Mann, as treasurer, to enable him to make the payment of May seventeenth, and the further sum of $10,000, which it alleges was in like manner advanced for a similar purpose, and in fact entered into and made part of the payment of $20,000, credited June seventeenth.   Upon both occasions the plaintiff discounted Mann's note, the first being in these words:

" No. —

"SARATOGA COUNTY TREASURER'S OFFICE, }
"BALLSTON SPA, *June* 16, 1875.         }

" In pursuance of a resolution passed November, 1874, by the board of supervisors of Saratoga county, the county of Saratoga promises to pay at the Saratoga county treasurer's

office, on or before the 15th day of February, 1876, to First National Bank, Ballston Spa, or bearer, ten thousand dollars, at seven per cent interest, for value received.

" $10,000.

" (Signed.)     HENRY A. MANN,

" *Treasurer.*"

The other is in similar terms except the date, and in each instance the proceeds were placed to his individual credit upon the books of the bank. The complaint prayed that these notes be declared valid claims against the county of Saratoga, and that the plaintiff have judgment thereon for the sum of $20,000, or in case it be adjudged that they are not valid then that the plaintiff have judgment against the county as for so much money had and received by said county for its benefit and use as above set forth.

The first alternative is not urged upon this appeal, nor is it now claimed that Mann was in any manner authorized to borrow the money for the county, nor that his contract for its repayment is binding or can be made binding upon it. It was so claimed, but the finding of the trial judge was to the contrary, and although that finding was excepted to, the exception is not presented here. Indeed, the argument of the learned counsel for the plaintiff against the judgment which defeats its claim, implies that Mann, in procuring the money, was not acting under the authority of the defendant, but is to the effect that the money obtained was appropriated by him to the payment of a debt due from the county to the State, and so, as he argues, the county thereby became bound to pay the plaintiff. If this be admitted as the law, it is obvious that boards of supervisors, who are empowered by statute "to examine, settle and allow all accounts chargeable against" their respective counties, "and to direct the raising of such sums as may be necessary to defray the same" (1 R. S., 367, § 4, sub. 2), may be greatly relieved of their functions by the action of any person who will take the risk of proving, to the satisfaction of a court or jury, that the debt

he voluntarily pays, or enables another to pay, was the proper debt of the county as a body corporate. But this conclusion can only be reached by overriding the statute, which not only limits the powers of a county as a contracting party (1 R. S., 364, § 1, sub. 3), but declares that those powers can be exercised only by the board of supervisors, or in pursuance of a resolution by them adopted. A doctrine which will permit that to be done by implication which cannot be done expressly, and which is fraught with so many obvious evils, is to prevail only upon persuasive and controlling authorities. In number the cases cited by the appellant are enough, and they came from this court, but do they reach the necessary mark? The one emphasized by the appellant is *Newman* v. *Supervisors of Livingston Co.* (45 N. Y. 676, 687), where it appeared that through the corporate act of that county an illegal tax had been enforced and paid by the collector into the county treasury, it was held that an action as for money had and received would lie in favor of the taxpayer against the county. In *Bridges, Supervisor of the Town of Liberty* v. *Supervisors of Sullivan Co.* (92 N. Y. 570), taxes collected of a railroad company and appropriated by law to the payment of town bonds issued in its aid, were improperly paid by the collector to the county treasurer, when they should have been paid to the railroad commissioner, it was held that a similar action would lie. These cases and all others cited on this point are easily distinguishable from the one before us. Here the plaintiff, in the most favorable view which can be taken of its case—and so it is presented by the appellant's counsel—seeks to make itself a creditor of the defendant by voluntarily enabling Mann to discharge a debt due from the defendant. The defendant made no request for the money, no promise to repay, and the record contains no finding or evidence from which either can be implied.

Indeed the proposition submitted by the appellant, and its only claim, is put in these words: "The receipt of the money by the treasurer, and payment of it upon the indebtedness of the county, created a liability of the county to pay

the debt thus incurred for its benefit." It is an answer to the case as presented by the appellant, that no person can make himself a creditor of another by voluntarily discharging a duty which belongs to that other to perform, and that no debt can be implied in law from a voluntary payment of the debt of another; that is, a payment made without his request and by one who is under no legal liability or compulsion to make it. Indeed, the plaintiff is somewhat further removed from a cause of action in that the supposed payer — the plaintiff, merely enabled Mann to make the payment. It placed the money loaned to his individual credit and thus added to the sum of his deposits, and consequently increased by so much the debt due from the bank to him. The bank at his request paid him from that fund, as it was in duty bound, and it so happens that he did pay the same money to the State treasurer. He might have paid it to any other person, and it is impossible to find any equitable consideration in the plaintiff's favor and against the defendant from the fact that he applied it in the discharge of an obligation, if one existed, against the defendant and in favor of the State. It is true that the notes discounted by the bank ran in the name of the county treasurer and were signed in that character. But it is not now pretended even that he had authority to make the notes in that capacity, nor does it appear, if that would alter the case, that the bank had the slightest reason to suppose he had such authority. Indeed the only authority, if any he professed to have, was recited upon the face of each note — a resolution of the board of supervisors, an inspection of which would have shown the extent of his authority and that it could not by any construction cover the notes on which the bank acted. Moreover, the bank did not credit the treasurer but did credit the individual. Whether or not the county owed the debt which was discharged by the treasurer with money procured from the plaintiff, we have not thought it necessary thus far to discuss. We have, for the sake of the argument, adopted the assumption of the appellant in that respect, but cannot agree with it. On the contrary we are

of opinion that the moneys due the State were payable by the treasurer of the county, not as its officer or agent, but as an individual designated by his official name for the performance of specific duties, and that the county is not responsible for his omissions or defaults in respect thereto, nor at all concerned with them any further, nor in any other manner than the law has declared. The money was paid to apply upon taxes which had become due to the State during the treasurer's official term. He had neglected to pay them over or to render an account thereof to the comptroller as required by law. (Laws of 1855, chap. 427; Laws of 1863, chap. 393.) Upon that ground he was sued, and because of that his bail also were liable to prosecution at the suit of the State (Laws of 1855, *supra*, §§ 12, 13, 14.), and not until the remedy against both had been exhausted could the county be required to act. It was only upon his default in these respects that any duty could attach to the county, and not until the loss by reason of that default had been ascertained by exhausting the remedy against the treasurer and his sureties, were any proceedings necessary on its part. "All losses," says the statute (Laws of 1855, *supra*, § 25), " which may be sustained by the default of the treasurer of any county in the discharge of the duties imposed by this act, shall be chargeable 'to such county, and the several boards of supervisors shall add such losses to the next year's taxes  *  *  *  of such county." When the event happened which might make any action by the county necessary, the nature of that action is thus pointed out, and the time when it shall be taken. There is no provision for a payment out of the general funds of the county, nor does the statute imply that the amount of a tax once paid shall be collected a second time from the taxpayer until the statutory remedies shall have been exhausted against the delinquent treasurer and the just balance ascertained. (*People* v. *Supervisors of Livingston Co.*, 17 N. Y. 486.) The duty of the county is prescribed by statute, and it is for no failure in performing it that the plaintiff sues. We find nothing in law or equity, nor in any suggestion of

natural justice, to which the plaintiff refers as arising " *ex æquo et bono*," which imposes any obligation in its favor upon the defendant. It holds no contract obligation; it has acquired no right, and consequently no equitable debt. We think the action was not well brought, and that the complaint was properly dismissed.

The judgment should be affirmed.

All concur except PECKHAM, J., not sitting.

Judgment affirmed.