### HOTCHKISS v. WILLIAMS et al.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

EXECUTORS AND ADMINISTRATORS — VOLUNTARY PAYMENT OF DEBT OF DECEDENT—LIABILITY OF ESTATE.

A wife assigned certain stock to her husband, which he exchanged for other stock, made payable to himself, and pledged it for a loan. Subsequently, while mentally incompetent to transact business, he assigned the stock to his wife, who voluntarily paid the loan, received the note, and on her husband's death presented a claim against his estate for the amount. *Held* that, having no authority to pay the loan, the assignment being insufficient to pass title, she obtained no right of action against his estate, since money voluntarily paid out for one by another cannot be recovered back.

Appeal from surrogate's court, Dutchess county.

Application by Henry L. Hotchkiss, surviving administrator of the estate of John O. Bronson, deceased, for the sale of realty of deceased for the payment of his debts. From a decree of the surrogate denying the application, applicant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

R. F. Wilkinson, for appellant.
Henry M. Taylor, for respondents.

GOODRICH, P. J.　This appeal is from a decree of the surrogate of Dutchess county denying a petition of Hotchkiss, as administrator, etc., of John O. Bronson, deceased, for an order to sell the real estate of the deceased for the payment of his debts. Dr. John O. Bronson died in March, 1897, leaving, him surviving, his widow, Martha P. Bronson, and three sisters, Mrs. Williams, Mrs. Hinton, and Mrs. Clark. Hotchkiss and the widow were appointed administrators. The widow died in February, 1898, and Hotchkiss was appointed administrator. Her heirs at law were Hotchkiss and two sisters, Susan L. Hotchkiss and Mrs. Tourneau. This controversy is really a contest between the next of kin of the two decedents for the estate of Dr. Bronson. The only personal estate of Dr. Bronson was about $550 in cash, and all his debts have been paid, except the claim which is the subject of this controversy, and which arises out of the following facts: The doctor was married in 1881, and shortly afterwards purchased the shares of his sisters in the Bronson homestead, added an adjoining lot, and made improvements thereon, and with his wife occupied the homestead as a summer residence; having a piece of property in Florida, where they spent the winters. The petitioner applies for an order directing the sale of this property. Mrs. Bronson inherited from her father a large amount of securities, which were in the hands of her brother, Mr. Hotchkiss. In June, 1884, she gave her husband a power of attorney to receive from Hotchkiss these securities, among which were 100 shares of the Shore Line Railroad Company. Dr. Bronson gave a receipt therefor, signed, "John O. Bronson, Attorney for Martha P. Bronson, née Hotchkiss." This stock was afterwards converted into 75 shares of the stock of the New York, New Haven & Hartford Railroad Company, a certificate for which was issued in the name of Dr. Bronson. In May, 1895, he pledged this stock to the United States Trust Company for a loan of $10,000, payable in six months. In October, 1895, Dr. Bronson, as stockholder, became entitled to subscribe for 18 shares of the increased capital stock of the railroad, and these shares were paid for by the check of Mrs. Bronson. In January, 1896, Dr. Bronson assigned the 93 shares to Mrs. Bronson, and a new certificate was issued to her for the shares. Meanwhile, and on January 16, 1896, Mrs. Bronson had paid the loan of the United States Trust Company, received the 75 shares of stock, and presents her claim against the estate of Dr. Bronson for the amount thus paid by her, with interest. She also filed a separate claim for $90,000, the value of other securities which had been received by Dr. Bronson from Mr. Hotchkiss; but this claim was practically abandoned at the hearing and on the appeal, so that the controversy relates solely to the rights of the

parties in the 75 shares of the stock of the New York, New Haven & Hartford Railroad Company, and the rights of Mrs. Bronson resulting from her paying the loan to the United States Trust Company and taking up the stock in question.

On the part of the petitioner, it is contended that the stock in question was always the property of Mrs. Bronson, and never the property of the doctor, that the latter had no right to pledge·it to the trust company for his own private loan, and that Mrs. Bronson had the right to redeem the stock, and hold the doctor's estate for the amount paid therefor. On the other hand, it is contended that the stock belonged to the doctor. We cannot ascertain from the record whether it was given or sold to him by his wife, or whether she authorized it or its proceeds to be used in the family expenses, or whether the·loan was made to obtain money for such family expenses. There is no sufficient evidence in the record on this subject, and we are left to conjecture. The evidence discloses nothing but the most harmonious relations between Dr. Bronson and his wife, and her complete confidence in him. She authorized him to receive from Mr. Hotchkiss the securities from her father's estate, and she apparently permitted him to use and manage the same without accounting for the proceeds. It may be.that this was the extent of his interest in the shares of stock of the New York, New Haven & Hartford Railroad Company, but of this there is no .evidence. We have the positive fact that Mrs. Bronson in August, 1893, assigned to her husband the original 100 shares of the Shore Line Railroad, and that the certificate therefor was surrendered, and stock in the New York, New Haven & Hartford Railroad Company issued to him therefor, and that, when he became entitled to subscribe to the increased capital of that company, he did subscribe, and receive a certificate for 18 additional shares. This gave him the legal title to the stock, and we must regard him as being its owner at that time, in the absence of any evidence to impeach his title. There would be no difficulty in our decision, if matters had remained in this condition, except for the fact that in January, 1896, Dr. Bronson assigned the stock to his wife. It is contended that at this time he was mentally unsound, and incapable of executing any contracts; having paresis, from which he subsequently died. There is evidence that in the fall of 1895 he became enfeebled in mind to such an extent as to require constant care and supervision. From that time until his death his brother-in-law, Mr. Clark, took charge of him. It is not necessary to analyze the evidence upon this subject, further than to say that it is sufficient to support the finding of the learned surrogate that before the note became due (that is, in November, 1895) the doctor "had become mentally incompetent to transact business at all times." This fact being assumed, the assignment of the stock by him in January, 1896, affords no light as to the question of the actual ownership of the stock. We see no escape from the conclusion that the legal title to the stock and the actual ownership coincided in the doctor. This being true, Mrs. Bronson, not being the owner of the stock, had no authority to pay the loan to the trust company, and she did not thereby obtain any right of action against the estate. The note was what

is commonly known as a "collateral stock note," not negotiable, and its delivery to Mrs. Bronson carried no title. "No person can make himself a creditor of another by voluntarily discharging a duty which belongs to that other to perform, and no debt can be implied in law from a voluntary payment of the debt of another." Danforth, J., in First Nat. Bank of Ballston Spa v. Board of Sup'rs, 106 N. Y. 488, 494, 13 N. E. 439. In City of Albany v. McNamara, 117 N. Y. 168, 172, 22 N. E. 931, 932, the court said:

"It is an elementary principle in such actions that money voluntarily paid out by one for another cannot be recovered back. 1 Pars. Cont. 471 et seq. In order to support such an action, it is essential that a request on the part of the person benefited, to make such payment, either expressly, or fairly to be implied from the circumstances of the case, must be proved. Add. Cont. 1055; Wright v. Garlinghouse, 26 N. Y. 539; Wellington v. Kelly, 84 N. Y. 546."

It is unnecessary to discuss any other questions raised on the appeal, and the judgment should be affirmed.

Decree of the surrogate's court of Dutchess county affirmed, with costs. All concur; CULLEN and HATCH, JJ., in result.