(55 App. Div. 475.)

### GREENE v. NIAGARA COUNTY.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

1. STATUTES—PRIVATE AND LOCAL ACT—TITLE.

Const. art. 3, § 16, declares that no private or local bill passed by the legislature shall embrace more than one subject, and that shall be expressed in the title. Laws 1900, c. 614, is entitled "An act for the relief of William C. Greene, as receiver of the Merchants' Bank of Lockport," and authorizes a reference to determine the amount of a claim of the bank against the county of Niagara for an overdraft by the bank's defaulting cashier, who was also in default to the county as its county treasurer, which overdraft was used to pay county obligations; and required the county to audit and pay the claim to the receiver. *Held,* that since it might be inferred from the title of the act that it was designed to grant some personal relief to the receiver, when in fact the act only authorized relief for the benefit of stockholders and creditors, and neither the supervisors nor taxpayers of the county could have been apprised by the title of the act that their interests were in any manner affected thereby, the title was not a sufficient compliance with the constitutional provision, and the act was therefore void.

2. SAME—LOCAL ACT—COUNTIES—CLAIMS—SPECIAL LEGISLATION.

Const. 1874, art. 8, § 10, declares that no county shall give any money or property to or in aid of any individual, association, or corporation, nor incur any indebtedness except for county purposes. *Held,* that where a defaulting county treasurer had overdrawn his account in a bank of which he was also a defaulting cashier, and the bank had knowledge that, but for his unlawful use of the county funds to prevent discovery of his default to the bank, such overdraft would not have been required, no legal or equitable claim existed in favor of the bank against the county on such overdraft; and hence the legislature had no power, in view of such constitutional provision, to pass Laws 1900, c. 614, providing for the allowance and payment of such overdraft by the county.

3. SAME—CONSTITUTIONAL LAW—VESTED RIGHTS—IMPAIRMENT.

Where a defaulting county treasurer had overdrawn his account in a bank of which he was also a defaulting cashier, and had used the money to pay county obligations, which overdraft would not have been necessary except for his default to the bank, of which fact the bank had knowledge, and in a subsequent action by the bank to recover such overdraft from the county a judgment had been rendered finding that the bank had no legal or equitable claim against the county, such judgment constituted a vested right, of which the county could not be devested after judicial remedies had been exhausted by a special act (Laws 1900, c. 614) providing that the county should pay such overdraft.

Spring, J., dissenting in part.

Appeal from special term, Niagara county.

Application by William C. Greene, as receiver of the Merchants' Bank of Lockport, for the appointment of a referee to pass on his claim as receiver against Niagara county, as authorized by Laws 1900, c. 614. From an order appointing such referee the county appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Chauncey E. Dunkleberger, for appellant.

David Millar, for respondent.

LAUGHLIN, J. This appeal involves the validity of chapter 614 of the Laws of 1900, entitled "An act for the relief of William C. Greene as receiver of the Merchants' Bank of Lockport." Section 1

of this act authorized an application by Greene, as receiver, to a special term of the supreme court for the appointment of a referee to ascertain and report the amount of moneys advanced by the bank to Arnold, as county treasurer, in excess of the amount on deposit to his credit in said bank, for the purpose of paying, and which was used to pay, obligations of the county; and whether there existed any equities which should be considered by way of reduction of such amount, and to report thereon. Section 2 of the act authorized the court to appoint a referee for such purpose, and upon the coming in of his report, if it should appear that any sum of money was advanced by the bank to the treasurer to pay obligations of the county in excess of the deposits in the bank to the credit of the treasurer, and that there was no legal or equitable offset, to confirm the report. Section 3 made it the duty of the board of supervisors to audit, allow, and pay the claim, with interest from the date of the closing of the bank. Section 4 provided that the county should receive notice of the application, and be entitled to be heard, and that the statute of limitations should not be a bar to the proceedings therein authorized. The constitutionality of this act is first challenged upon the ground that it comes within the condemnation of section 16 of article 3 of the state constitution, which provides that "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." The title of this act is both misleading and deceptive. It might be inferred therefrom that it was designed to grant some relief personal to the receiver. The only relief granted is to the creditors and stockholders of the bank. The receiver is authorized for their benefit to recover moneys in the manner therein provided from the county of Niagara alleged to have been drawn from the bank by the county treasurer in excess of his account as such, and used by him for the payment of obligations of the county. The sole purpose, object, and effect of the act was to create a liability, which previously had no existence in law or equity, in favor of the receiver for the benefit of the creditors and stockholders, whom he represented. The county of Niagara, as such, had no previous dealings with this bank; no contract obligations existed between them. Neither the supervisors nor the taxpayers of the county could have been apprised by the title of this act that their interests were in any manner to be affected thereby. The county, through its board of supervisors, at the first opportunity resists the enforcement of the claim under this special act, and upon the motion for the appointment of a referee it presented affidavits fully showing that it had waived none of its rights, and had no notice or knowledge of the pendency of this act in the legislature. It is both a private and a local act, and the subject is not fairly expressed in the title. The case of Brewster v. City of Syracuse, 19 N. Y. 116, is distinguishable. There the act was passed for the relief of a contractor with the city. The city did not resist the enforcement of the law. The question was presented by a taxpayers' action, and the city demurred. The court held that the general subject was expressed in the title, but it was

apparently influenced in that determination by the fact that the question was raised by a taxpayer who was not a party to the contract, and that the city, if it did not favor the passage of the law, acquiesced therein. The validity of the act is also challenged upon the ground that, in effect, thereby the legislature grants a new trial to the receiver of the bank upon issues which have been previously tried and determined adversely to him in the courts of the state.

The petition shows that the county treasurer overdrew his account the sum of $6,428.83 prior to the 6th day of October, 1893, when the bank ceased to do business, and that no part of this sum has been repaid to the bank. The pleadings, the decision of the referee, and judgment roll in an action brought by William C. Greene, as receiver of this bank, against the county of Niagara and Timothy E. Ellsworth and others, were read in opposition to the appointment of the referee, as well as affidavits. It appeared that Arnold was cashier of this bank, as well as county treasurer, and that the bank was one of the depositaries of county funds; that prior to February 23, 1892, the bank wrongfully borrowed from Arnold, as county treasurer, county funds to the extent of $9,550, he taking a note and draft as security therefor; that at the time of the failure of the bank he still held these securities, and delivered them to Senator Ellsworth, who, thinking the county might be entitled thereto, declined to deliver them to the president of the bank, who presented a formal, written assignment thereof subsequently made by Arnold to the bank as security for the balance of overdrafts made by Arnold as county treasurer, and honored by the bank; that within a few days thereafter the president of the bank individually delivered to Senator Ellsworth an amount of money equal to the amount which Arnold had loaned the bank from the county funds, and as collateral for which he held these securities; that subsequently the moneys so paid were deposited by Ellsworth, as trustee, in the National Exchange Bank of Lockport, by stipulation of the parties, subject to the order of the court in the action brought by Greene, as receiver, against the county; that thereafter said action was brought by the receiver of the bank to recover said moneys by virtue of the assignment of said securities by Arnold to the bank as collateral for his overdrafts as county treasurer, or to have it decreed that it was entitled to said securities, or the proceeds thereof, to the extent necessary to indemnify it on account of said overdrafts. It appears that the amount of the overdrafts claimed by the receiver of the bank in that suit corresponds exactly with the amount of the overdraft referred to in the petition presented under this special act. It further appears that these overdrafts were permitted by the president within about two weeks of the time the bank closed, when he knew not only that Arnold was a defaulter to the county by reason of the previous loan to the bank, which rendered these overdrafts necessary, but after Arnold had confessed that he was also a defaulter to the bank in the sum of about $30,000. In that suit the county claimed that, although Arnold illegally loaned its money on these securities, yet,

.nevertheless, the bank having received the money, the securities inured to the benefit of the county, and that it should be reimbursed from the proceeds thereof the amount of its money thus wrongfully appropriated by Arnold and the bank. The case was tried before a referee, who sustained the contention of the bank, but his decision was overruled by this court, which held that the securities inured to the benefit of the county. The opinion of this court expressly recognized that, if equity required it, the moneys advanced on such overdrafts might be applied in reduction of the moneys of the county thus wrongfully loaned. This court intimated, however, that the facts as presented by the record did not establish a case for such equitable relief in favor of the bank. Greene v. Niagara Co., 8 App. Div. 409, 40 N. Y. Supp. 862. On a new trial before another eminent lawyer as referee the equitable claims of the bank to such application of said overdrafts seem to have been fully considered, and the decision expressly decides that the overdraft would not have become necessary had it not been for the illegal loan of the county moneys to the bank, which it had not repaid, and that, notwithstanding the fact that the moneys drawn on the overdraft were used to pay an indebtedness of the county to the Erie County Penitentiary, to the Willard Asylum, and to pay state taxes, the county was equitably entitled to the proceeds of these securities without deduction on account of such overdrafts. This decision was affirmed by this court and by the court of appeals. Greene v. Niagara Co., 31 App. Div. 634, 53 N. Y. Supp. 1104; Id., 161 N. Y. 651, 57 N. E. 1111.

It will be observed that the county had no legal title to the securities·involved in that litigation, or to the moneys paid in redemption thereof. Upon principles of equity, it was adjudged that the securities were held for the benefit of the county. It therefore appears that the action resolved itself into a suit in equity, pure and simple, and the court determined the equities between the county and the bank. This is manifest from the decision of the referee and from the points of counsel on the argument in this court and in the court of appeals. It is evident that, if the bank had been an innocent party in allowing these overdrafts, the court could and would in that suit have applied the amount of such overdrafts in reduction of the prior loan from Arnold to the bank, and for which the securities were given. Upon the facts disclosed there was no legal or equitable claim on the part of the bank either to that fund or against the county for money had and received, as the loan was not procured in good faith for the benefit of the county, but to cover up and prevent the discovery of the county treasurer's defalcation. First Nat. Bank of Ballston Spa v. Board of Sup'rs of Saratoga Co., 106 N. Y. 488, 13 N. E. 439; Clark v. Board, 107 N. Y. 553, 14 N. E. 428; Power v. Village of Athens, 99 N. Y. 592–602, 2 N. E. 609; Craft v. Railroad Co., 150 Mass. 207–210, 22 N. E. 920, 5 L. R. A. 641, and cases cited; McDonald v. Mayor, etc., 68 N. Y. 23; Parr v. President, etc., 72 N. Y. 463. It now further appears without controversy that the county has settled and adjusted its claim against the sureties upon Arnold's official bond for his defalcation.

But, regardless of this, if the county should be compelled to reimburse the bank the amount of the overdraft, it would have no redress against the sureties. Presumably, it was fully protected against any defalcation on the part of Arnold by his official bond. After Arnold became a defaulter both as cashier of the bank and as county treasurer, the managing officer of this bank allowed him to overdraw his accounts, thus enabling him to cover up the defalcation to that extent, and to relieve himself and his sureties from liability to the county. But for this, the county might have sooner discovered the defalcation, and have protected itself by proceedings against Arnold and his sureties. The officers of the bank negotiated the loan from Arnold with full knowledge that they were obtaining the trust funds of the county, and that such loan was unauthorized. The equities are with the county and the taxpayers thereof. The effect of the act under consideration is to relevy a tax upon the innocent taxpayers of the county of Niagara, which they have once paid, to indemnify the creditors and stockholders of this private banking corporation against a loss for which the officers with whom they intrusted the management of the bank were solely responsible. The securities and the fund involved in the previous litigation between the receiver and the county legally belonged to the bank. They had been merely pledged as security for the loan of county funds obtained by the bank. If the bank had been an innocent party, it would have been entitled to redeem those securities, and to have the overdrafts made by Arnold as county treasurer which it honored applied to that end. The court, however, on a full consideration of the facts, decided that in equity the county was entitled to retain the entire fund, and awarded judgment accordingly. In these circumstances, was it competent for the legislature to, in effect, overrule the decision of the court, and grant a rehearing of the bank's claim to equitable relief? There are decisions of the court of appeals wherein that court has declared that the power of the legislature to raise money by taxation upon the entire state, or upon a political subdivision thereof, and to appropriate such moneys in the settlement of equitable claims or for charitable purposes, or even to dispose of the same gratuitously, is practically unlimited. Town of Guilford v. Board of Sup'rs of Chenango Co., 13 N. Y. 143; Brewster v. City of Syracuse, 19 N. Y. 116; People v. Board of Sup'rs of Essex Co., 70 N. Y. 235; Cole v. State, 102 N. Y. 48, 6 N. E. 277; O'Hara v. State, 112 N. Y. 146, 19 N. E. 659, 2 L. R. A. 603; Mayor, etc., of New York v. Tenth Nat. Bank, 111 N. Y. 446, 18 N. E. 618; Wrought-Iron Bridge Co. v. Town of Attica, 119 N. Y. 204, 23 N. E. 542. Upon the facts, however, these were all proper cases for equitable relief, and those in which the extreme doctrine was announced were all decided under laws enacted prior to the adoption of sections 10 and 11 of article 8 of the constitution in 1874. These sections have been readopted in section 10 of article 8 of the present constitution, and constitute the first two sentences thereof, which read as follows:

"No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association

or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation; ' nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes. This section shall not prevent such county, city, town, or village from making such provision for the aid or support of its poor as may be authorized by law."

In view of these provisions of constitutional law, by which the people have wisely limited the power of the legislature, the former decisions are no longer controlling authorities. The question at bar must be decided upon a construction of the constitution as it existed when the special act was passed. It is no longer competent for the legislature to impose a tax upon a county, city, or town to pay a claim·which is neither founded in law nor equity, which is in no sense for a public purpose. In re Jensen, 28 Misc. Rep. 378, 59 N. Y. Supp. 653, affirmed in 44 App. Div. 509–513, 60 N. Y. Supp. 933; In re Straus, 44 App. Div. 425, 61 N. Y. Supp. 37; Roberts v. State, 30 App. Div. 106, 51 N. Y. Supp. 691, affirmed in 160 N. Y. 217, 54 N. E. 678; Bush v. Board, 159 N. Y. 212, 53 N. E. 1121, 45 L. R. A. 556; Cooley, Const. Law (6th Ed.) p. 283, subd. 1; Id. p. 286, subd. 4; Dill. Mun. Corp. §§ 75, 76. It may be conceded that it is competent for the legislature, by virtue of its sovereign political and governmental control over counties, cities, and towns, and by virtue of its power of taxation, to direct a municipal corporation which has received an equivalent to pay a claim not legally binding or enforceable at law or in equity for want of some informality in its creation, or even want of power on the part of the officials in incurring the obligation. Most of the cases that arise are of that nature. This, however, is not a case of that character. It is elementary law that it is not competent for the legislature to annul a decision of the court, or to grant a new trial or a rehearing, or to open a judgment after the time to appeal therefrom has expired, or existing remedies have been exhausted. That is judicial, not legislative, power; and judgments are contracts within the protection of the constitution. Germania Sav. Bank of Kings Co. v. Village of Suspension Bridge, 159 N. Y. 368, 369, 54 N. E. 33; Burch v. Newbury, 10 N. Y. 374; People v. Carnal, 6 N. Y. 463; Ely v. Holton, 15 N. Y. 595; Gilman v. Tucker, 128 N. Y. 190, 28 N. E. 1040, 13 L. R. A. 304; Baldwin v. Mayor, etc., 42 Barb. 549; Mills v. Charleton, 29 Wis. 400; Lawson v. Jeffries, 47 Miss. 686; Merrill v. Sherburne, 1 N. H. 199; Regents v. Williams, 9 Gill & J. 365; Yeatman v. Day, 79 Ky. 186; Sanders v. Cabaniss, 43 Ala. 173; De Chastellux v. Fairchild, 15 Pa. St. 18; Young v. Bank, 4 Ind. 301. While the legislative control over counties, cities, and towns in matters political and governmental is doubtless unlimited, yet these municipalities, in matters affecting their property and private contract rights, enjoy practically the same immunity from legislative aggression for the benefit of private corporations or individuals as is accorded to business corporations and private citizens. People v. Ingersoll, 58 N. Y. 1; Same v. Batchellor, 53 N. Y. 128; Weismer v. Village of Douglas, 64 N. Y. 91; Hardenbergh v. Van Keuren, 16 Hun, 17; Board v. Blodgett, 155 Ill. 441, 40 N. E. 1025; People v. Common Council of Detroit,

28 Mich. 228; Grammar School v. Bailey, 62 Vt. 467, 20 Atl. 820, 10 L. R. A. 405; Inhabitants of Hampshire Co. v. Inhabitants of Franklin Co., 16 Mass. 76–84; Supervisors of Jackson Co. v. Supervisors of La Crosse Co., 13 Wis. 490; Milam Co. v. Bateman, 54 Tex. 153; State v. Foley, 30 Minn. 350, 15 N. W. 375; Citizens' Savings & Loan Ass'n of Cleveland v. City of Topeka, 20 Wall. 655, 22 L. Ed. 455.

We are of opinion that the county of Niagara acquired a vested right by the decision of the court in the former action by the receiver of the bank against it, and that it was not competent for the legislature to subject it to a new trial of the legality or equity of the claim of the bank. It follows, therefore, that the special act of the legislature under consideration was unconstitutional and void, and conferred no authority for the appointment of the referee by the court. The order should be reversed, with $10 costs and disbursements to appellant, and the application denied, with $10 costs. All concur; SPRING, J., in part only.

SPRING, J. I concur in the result reached by Mr. Justice LAUGHLIN, but I do not believe the act in question is violative of section 16 of article 3 of the state constitution. Mr. Greene was receiver of the Merchants' Bank, and the act is for his relief as such official, and not as an individual. As receiver he represented the creditors and stockholders of the bank, and whatever relief was granted can fairly be said to be for their benefit, and that is sufficiently expressed in the title. Van Brunt v. Town of Flatbush, 128 N. Y. 50, 27 N. E. 973; Curtin v. Barton, 139 N. Y. 505–513, 34 N. E. 1093; Brewster v. City of Syracuse, 19 N. Y. 116.