SOLOMON KELLER ET AL., APPELLANTS, v. HENRY I. PHILLIPS, RESPONDENT.

*Husband and wife—Liability for necessaries—Prohibition.*

A husband is bound to provide for his wife and children whatever is necessary for their suitable clothing and maintenance, according to his and their situation and condition in life. Ordinarily, he will be presumed to assent to her making upon his credit such purchases as, in the conduct of the domestic concerns, are proper for her management and supervision.

But if he sees fit to destroy such presumption by an express prohibition, no one having notice thereof may trust the wife in reliance upon his credit, unless the husband so neglects his duty that supplies become necessary.

In such case, the party seeking to recover, in the face of such prohibition, takes the burden of proving the neglect of the husband to supply such necessaries. And to that end, it is not enough to show that the goods sold were in their nature suitable and necessary, and that they came to the use of the family, or even that in part they came to the use of the husband himself, unless there be also evidence that the husband knew that they were purchased upon credit. A *fortiori*, it is error to reject evidence tending to show that the husband, after such prohibition, furnished his wife with money and means for her support, and that of the family.

APPEAL from the judgment of the Supreme Court, in General Term, for the Fourth District, reversing a judgment of the County Court and Justice of the Peace, in favor of the Plaintiff, for $111.91.

The action was brought to recover for goods, etc., alleged to have been sold to the Defendant, his family, agents, and servants, at the Defendant's request, on the 20th January, 1860, and afterward, and until 15th October, 1861.

The only defence set up in the answer was, that on the 6th January, 1860, the Defendant forbade the Plaintiffs' trusting his wife on his account, and told the Plaintiffs that he would pay no more debts contracted by his wife without his consent; and that afterward, without the Defendant's knowledge or consent, the Plaintiffs sold the goods claimed for to her, and wrongfully trusted her, contrary to the express command of the Defendant.

On the trial, it appeared that for four or five years previous to the transactions in question, the wife and children of the Defendant had been accustomed to procure goods at the Plaintiff's store, and the Defendant had settled all the bills during that time. On the 6th January, 1860, the bill for purchases made chiefly by the wife, from December 16, 1858, to December 19, 1859, being unpaid, the Defendant gave to the Plaintiffs his note or due-bill for the amount, $43.92, which, when it amounted, by accruing interest, to $44.94, appears to have been paid; the time of payment is not definitely fixed by any witness, but if it remained unpaid until $1.02 had accrued as interest, it is obvious that the time of payment was about the 6th May, 1861.

The evidence that the Plaintiffs were forbidden to sell to the wife or family on credit, was the testimony of the Defendant, and of Keller, one of the Plaintiffs, and Snell, their clerk.

The Defendant testified that, on the 6th January, 1860, when he went to the Plaintiffs' store to settle the previous bill, and gave the note therefor, he told the Plaintiff Keller " that he forbid the Plaintiffs of making any charge against him, got by his wife, family, or any one else;" that he was not able to pay the bills, and that he had not the means to pay with, and that, in strong terms, he declared to Keller he would not pay another cent if he trusted his wife, and that Keller replied, " Just as you say." That the first he knew that his wife and family continued trading at the Plaintiffs' store, was when a bill (which contained charges to January 31, 1861) was laid upon his lap in the store of one Norton ; and that he knew nothing of his wife and family getting goods at the Plaintiffs' store, and using them in the family, between January 6, 1860, and the last of October, 1861. He further testified that he furnished his wife and family with money and means to clothe herself and family.

The Plaintiff Keller testified that the Defendant forbid his trusting his wife, at the time *when he paid* the note, and that he *thinks* it was not at the time when he gave the note. That he replied that he "would not refuse his wife any credit she asked for." That the Defendant was angry when he paid the note, and

(in the like terms testified to by the Defendant) declared that he would not pay it (*i. e.* anything sold to the wife on credit). That he told Defendant that he should not refuse his wife credit, for he did not mean what he said; that if he refused, the Defendant "would be mad." (This latter statement the Defendant in his testimony contradicted.) Snell, the clerk, testified that "after paying the note, as the Defendant was about to leave the store, he told Mr. Keller not to trust his wife any more."

Other particulars in the testimony of these witnesses, left it at least doubtful whether it was at the making of the note or when the note was paid, that the prohibition was given.

The Plaintiffs continued to furnish goods, which were proved to have been used in the Defendant's family, toward clothing the wife, children, and servants of the Defendant, for bedding, and some articles for shirt-bosoms for the Defendant. What was used for the servant was deducted from her wages. In aid of the Defendant's claim, that he himself furnished his wife with suitable means for the support of herself and the family, the Defendant proved that he had a boarder in his family, at $2 a week, for nearly three years; and the question was then asked whether his wife received the money paid for such board, and on objection the question was excluded. So also an inquiry whether the wife had the milk of two cows to sell, and apply the proceeds as she thought proper, was excluded.

The jury found a verdict for the Plaintiffs, and the judgment entered thereon was affirmed by the County Court.

On appeal, the Supreme Court reversed both judgments, and the Plaintiffs appealed to this Court.

*J. E. Dewey* for Appellant.

*S. Hand* for Respondent.

WOODRUFF, J.—The Defendant was liable for such part of the goods, mentioned in the Plaintiffs' bill of particulars, as were purchased before the Defendant gave notice, forbidding them to sell to his wife and family on credit. In addition to such assent as would be presumed from the nature of the purchases and their

actual use in his family, there was the authority resulting from some four or five years' dealing by the Plaintiffs with the wife, and the payment of the bills by him, in distinct sanction of the sales.

This was ample to warrant a continuance of the like dealings, and bound the Defendant to pay for the further purchases, independent of the question how far, in the absence of such prior authority or sanction, the husband is bound by the contracts of the wife, in the purchase of goods for domestic use. There was conflict in the testimony as to the time when the notice was given; the Defendant fixing a date prior to the sale of any of the goods in question in this action, and the Plaintiff Keller, and the clerk Snell, fixing a date prior to which two-thirds of the goods had been sold and delivered.

Had the Plaintiffs, under such conflicting evidence, recovered for the goods sold prior to the payment of the Defendant's note, on which occasion the Plaintiff says the prohibition was given, it would show that in respect to the time when the notice was given, which was set up in the Defendant's answer as his sole defence, the recollection of the Plaintiff and the clerk was deemed by the jury more reliable than the recollection of the Defendant, and there could be no reason for disturbing the judgment. But the recovery was also had for the goods sold after (according to the testimony of the Plaintiff and the clerk, as well as that of the Defendant) the notice was actually given. And that the conversation did take place in which the Defendant forbade the Plaintiffs to sell goods to his wife upon credit, and declared in terms quite emphatic, though profane and indecent, that he would not pay for goods so sold, is not in doubt; it is sworn to by both parties, as well as, in substance, by one other witness.

The rules of the law relating to the power of the wife to bind her husband to payment for goods purchased by her for the use of herself and the family, are well settled. The husband is bound to provide for her and them whatever is necessary for their suitable clothing and maintenance, according to his and their situation and condition in life. And ordinarily he will be presumed to

assent to her making such purchases as, in the conduct of the domestic concerns, are proper for her management and supervision.

But he is at liberty to withhold such assent, and destroy such presumption, by an express prohibition. And if he do so, no one, having notice thereof, may trust the wife in reliance upon his credit, unless the husband so neglects his own duty that supplies become absolutely necessary, according to their condition.

In the present case, therefore, the sale of the goods being proved, or not being denied by the Defendant, the burden of proof was upon the Defendant to show that the credit was given against his express dissent, and notice thereof to the Plaintiffs. This being proved, the burden was upon the Plaintiffs to show that the Defendant did not suitably provide for his family according to his and their condition. Of that the Plaintiffs were not to be the judges, except at the risk of establishing it by proof, and of that they offered no testimony whatever, but on the trial objected to the Defendant's proving affirmatively that he did so, and the Justice excluded evidence *offered* by him tending to *show* in what mode, and, in fact, to what extent, that provision was made.

The Defendant was not bound to show affirmatively that he did so provide ; and yet, so far as he appears to have been permitted, his testimony went to show that he did make suitable provision.

Nor is it enough that the articles sold are in their nature and description necessary and suitable for the use of the wife and family. If they were not so, there would be no presumption of the husband's assent to the purchase in any case. It is indispensable, where the vendor has been forbidden to sell upon the wife's request, on the husband's credit, that the vendor show, not only that the goods were in their nature suitable and necessary, but that the husband neglected his duty to provide supplies, and that, for that reason, they were necessary. These rules are elementary.

Modern legislation, in preserving to the wife all her own property, has taken away some of the grounds upon which the duty of the husband was placed by the common law; but it has not yet gone so far as to invest the wife with a discretion which the hus-

band cannot control, and enable her to spend his property or involve him in debt against his will. (Mott *v.* Comstock, 8 Wend. 544; Kimball *v.* Keyes, 11 Wend. 34; 2 Swift Dig. 31; 2 Kent's Com. 146; Blowers *v.* Sturtevant, 4 Denio, 46). It is suggested by counsel for the Appellants that the jury may have inferred from the conversations testified to, that the Defendant was not in earnest when he forbid the Plaintiffs trusting his wife on his credit; that the Defendant knew that they did not think he was in earnest. There was nothing in the conversation to warrant any such infer·ence, and there was no room for speculation.

On the .contrary, no terms could be more explicit or more apparently sincere. True, the Plaintiff Keller declared to him that he would not refuse his wife any credit she asked for, but the Defendant also declared that he would not pay a cent of it. This declaration of the Plaintiff Keller was either a rude and unwarrantable defiance of the husband, or an expression of an intention to sell upon the wife's credit; if the latter, he was at liberty so to sell, but such sales would not bind the husband.

It is also insisted, that from the fact that a bill for a part of the goods was stated by the Defendant to have been laid upon his lap in the store of one Norton, it might be inferred that he either never intended the notice or proclamation to be acted upon, or that he assented afterward to the sales made, and so practically revoked it.

Had the Plaintiffs shown the circumstances under which this bill was laid upon the Defendant's lap, or by whom it was placed there, or that the Defendant was called upon to pay it, and either assented or did not assent, or anything, in short, from which it could reasonably be inferred that the Defendant accepted it as an account against him, there would be force in the argument; but the bald fact " that the bill was laid on his lap in Norton's store," without showing by whom or how it came to be in Norton's store, or whether any one representing the Plaintiff was present to receive any assent or dissent, or what was said, or what was done with the bill thereafter, or even that the Defendant

retained it in his possession, warrants no interference at variance with his previous declared purpose.

For these reasons the judgment of the General Term of the Supreme Court should be affirmed.

All affirm.

JOEL TIFFANY,
State Reporter.