---

(7 Misc. Rep. 343.)

### In re MORTON'S ESTATE.

### In re MILLER.

(Surrogate's Court, Monroe County. February, 1894.)

1. EXECUTORS AND ADMINISTRATORS—PRESENTATION OF CLAIM.
   An administrator's knowledge of the existence of a claim against the estate does not dispense with the necessity of presenting it within a reasonable time after the statutory notice.

2. SAME—WRITING—NECESSITY.
   4 Rev. St. (8th Ed.) p. 2561, §§ 34, 35, requiring a creditor of a decedent to exhibit his claim, with the vouchers thereof, to the executor or administrator, requires claims to be presented in writing, and a verbal communication by a judgment creditor to an administrator in regard to his judgment is not a presentation of his claim.

Application of Benjamin C. Miller, a judgment creditor of John Morton, deceased, to compel payment of his judgment.

For former report, see 23 N. Y. Supp. 1104.

W. E. Davis, for petitioner.
Louis H. Jack, for administratrix.

ADLINGTON, S. John Morton died on the 23d day of March, 1883. Shortly before his death, verdicts had been rendered against him in two actions pending in the supreme court, but judgment had not been entered thereon at the time of his death. On August 10, 1883, judgments were entered on said verdicts against said Morton; one for $219.01, and the other for $374.02. The judgments, however, were irregular, in that no memorandum of the defendant's death was made, as required by section 1210 of the Code of Civil Procedure. On July 7, 1884, said judgments were assigned by the plaintiff in the actions to one Sanford, and on October 1, 1892, by said Sanford to Benjamin C. Miller, the petitioner herein. In November, 1892, on Miller's application, the entry of the judgments was corrected to conform to the provisions of the Code just mentioned, and thereafter this proceeding was begun by said Miller to compel the payment of said judgments by Morton's administrator. Letters of administration on decedent's estate were granted to his widow on July 12, 1883, and she duly published the statutory notice for presentation of claims by creditors, and the six-months publication of such notice ended January 5, 1885. In the summer of 1883 or 1884, and before the

time limited by such notice for the presentation of claims, the attorney for the plaintiff in the aforesaid actions called on the administrator, as he says, "in reference to the judgments." His testimony is that he talked with her in regard to the claims growing out of the judgments, and tried to arrange with her for their payment; that he told her the amount of them, which he thinks he had there upon a slip of paper, and that she said that she knew nothing about the judgments, though she had known of the litigation, and referred him to her brother, an attorney. Soon afterwards the judgments were assigned, and neither assignee ever presented his claim thereon to the administrator, or took any steps to collect the same, until Miller began the pending proceeding. Assets to the amount of nearly $4,000 came into the hands of the administrator, and, after paying the debts of decedent, she expended nearly the whole sum remaining, about $3,000, in the purchase of a cemetery lot, the erection of a costly monument to the decedent, in improvements upon real estate left by him, and advances to the next of kin. This was all done with the consent of the next of kin, and pursuant to an agreement between them and the administrator, and in entire good faith. The petitioner maintains that, as against him, these outlays and advances should be disallowed, and the administrator held to have the moneys on hand for the payment of his claim. I do not think his contention can be maintained. He took the claim subject to any defense arising from the acts or laches of his predecessors in interest. An administrator who has conformed to the requirements of the statute, and has published the prescribed notice, has a right to assume that all persons having claims against the decedent, which they intend to enforce, have presented the same, and demanded payment thereof; and if he thereafter distributes the assets to those entitled to them, or expends them in a manner to which they have given their approval and consent, he should not be accountable for such assets to a creditor who never presented his claim, or took any legal proceeding to collect it, while the funds were in the administrator's hands. O'Conner v. Gifford, 117 N. Y. 275, 283, 22 N. E. 1036; Erwin v. Loper, 43 N. Y. 521. An administrator's knowledge of the existence of a claim against the estate does not avoid the necessity of its due presentation. Livingston v. Gardner, 4 Redf. Sur. 517, note; Jones v. Lightfoot, 10 Ala. 17–24; Pfeiffer v. Suss, 73 Mo. 252. Unless, therefore, the claim arising out of these judgments was duly exhibited or presented to the administrator within a reasonable time after the publication of the statutory notice, the petitioner cannot complain of the disposition which, with the consent of the persons interested, has been made of the personal estate of Mr. Morton. The petitioner's counsel relies on the conversation between the plaintiff's attorney and Mrs. Morton, heretofore mentioned, as a sufficient exhibition or presentation of the claim under the statute. There is some doubt whether, under his general retainer to prosecute the action, the attorney had authority to exhibit or present this claim to the administrator; and it is also doubtful whether the claim could properly be presented and recognized as "a debt to be paid in the course of administration," until after the entry and docket of the

judgments had been made to conform to section 1210 of the Code of Civil Procedure. But, assuming for present purposes that these doubts are resolved in favor of the petitioner, still I do not think that what occurred between Mr. Jones and Mrs. Morton was a legal presentation of the claim, even conceding the correctness of the former's version of the conversation,—a point which is disputed by the administrator. The creditor is required, by the notice given under the statute, to exhibit his claim, with the vouchers thereof, to the executor or administrator, who may, if he choose, require the claim to be supported by the affidavit of the claimant that it is justly due, that no payments have been made thereon, and that there are no offsets to it. Rev. St. pt. 2, c. 6, tit. 3, art. 2, §§ 34, 35.[1] The statute plainly intends that the claim shall be presented or exhibited in some writing, stating its nature and amount, the owner's name, and demanding its payment. The personal representative of the estate is then in possession of information which will enable him to act intelligently, and either to admit the claim or take such steps to protect the estate against it as he shall deem prudent and necessary. This is the construction placed on the statute by the courts of this state, and by those of other states in whose statutes similar provisions and regulations are found. Cruikshank v. Cruikshank, 9 How. Pr. 350, 351; King v. Todd (Com. Pl. N. Y.) 15 N. Y. Supp. 156; Robert v. Ditmas, 7 Wend. 523; Gansevoort v. Nelson, 6 Hill, 392; McDowell v. Jones, 58 Ala. 35; Farris v. Stoutz, 78 Ala. 134; Pfeiffer v. Suss, 73 Mo. 252. There is some evidence which tends to show that a larger sum might have been realized from the decedent's interest in the property of the firm of which he was a member at the time of his death, but the disappearance or destruction of the firm books makes an accounting with the surviving partner impracticable, and the testimony is not sufficiently definite to warrant a finding that the administrator should be charged with any specific sum on account of the partnership business, except the $200 received from Mr. Fisk for woolen cloth sold to him. There will be an unexpended balance in the administrator's hands of about $500, and that may be decreed to be applied on the petitioner's claim, after deducting the expenses of this accounting. Ordered accordingly.