ing issue, the share or shares of those so deceased shall go to their said issues, respectively; and in case, at the time of my said wife's decease, either of my said sisters, or my said brother George, shall not be living, but shall have heirs of their bodies, the share or shares of those so deceased shall go to their said heirs, respectively."

From the foregoing language I am convinced that the testator intended that said $15,000 should be divided into four equal parts, and one-fourth thereof, upon the death of the testator's wife, should go to George Fox, if living, and to his issue, if dead; that one-fourth thereof should go to Kate Brownell, if living, and to her issue, if dead; one-fourth thereof to testator's sister, Edna, if living, and to her issue, if dead; and the remaining one-fourth thereof should go to the children of testator's deceased brother, Jeremiah, living at the time of testator's wife's death, and, if any of said children should then be dead, the issue of the dead child should take the parent's share.

The expression, "share and share alike," it is claimed, is meaningless in connection with the construction suggested. It seems to me that the expression, "and the children of my deceased brother, Jeremiah," refers to a class. There is nothing before the court, or in the will, to indicate that the trustee meant to give the children of Jeremiah more than he would have given their father, had he been living. So far as appears, had he lived, he would have shared equally with his brother and sisters, taking only one-fourth. Naturally, the testator would give the children the parent's share; and such intention in this particular case is borne out by the language used in the fourth clause of the will to the effect that, if any beneficiary should die, his or her share should go to the issue of the dead person's body. Jeremiah's children are not mentioned by name, but designated as a class. They were called "the children of my deceased brother, Jeremiah," indicating the testator's intent to substitute them in place of their father.

I hold and decide that the children of Jeremiah take as a class, together receiving but one-fourth or share of said $15,000. In support of this construction, see Ferrer v. Pyne, 81 N. Y. 281; Matter of Walker, 39 Misc. Rep. 680, 80 N. Y. Supp. 653; Vincent v. Newhouse, 83 N. Y. 505.

The trustee is therefore charged with $15,000 under the fourth clause of the will, the same to be distributed as indicated in the trustee's account.

Decreed accordingly.

(60 Misc. Rep. 35.)

### In re BROWN'S ESTATE.

(Surrogate's Court, Cattaraugus County. June, 1908.)

1. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATE —PRESENTATION.
 A presentation to an administratrix of a written statement of a claim against the decedent's estate, showing the amount thereof, is necessary for its approval, and the fact that the administratrix was acquainted with its existence is insufficient to supply the want of such statement.
 [Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 764–766.]

2. SAME—ALLOWANCE.

A statement of claims which have never been presented in writing to the administratrix, in her account filed, in the schedule of claims presented, together with the names of the claimants and the nature of their claims, is not an allowance of the claim.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 834.]

3. SAME.

Where a claim has been presented to an administratrix, an allowance is not to be inferred without some affirmative recognition thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 834.]

4. SAME—CLAIMS OF ADMINISTRATRIX.

Where it appeared that the administratrix of an estate during the lifetime of the decedent paid premiums on a policy on his life, payable to her on his death, and after his death she received the amount of the policy, a claim by her for the premiums so paid should not be allowed, without proof of any request by decedent that she should pay such premiums.

5. SAME—PAYMENT OF TAXES.

Where an administratrix paid taxes on decedent's land before his death, and while he was incompetent, the amount thereof should be allowed her, though no request on his part to pay the taxes were shown.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 734.]

6. SAME—SUPPORT OF DECEDENT.

Where an administratrix before decedent's death expended money for the support of decedent and his family on his promise that it should be paid out of the estate, the amount thereof will be allowed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 734.]

In the matter of the estate of David N. Brown. Proceedings on settlement of administratrix's account. Decree rendered.

Nash & Bird, for administratrix.

D. E. Powell, for contestants.

DAVIE, S. David N. Brown died, intestate, February 7, 1905, leaving him surviving his widow, six children, and one grandchild, his heirs at law and next of kin. At the time of his decease he possessed a small amount of personal property, and real estate of the value of $6,000. Letters of administration upon his estate were issued, February 25, 1905, to the widow, who now presents her accounts for final judicial settlement, to which various objections are filed.

It is asserted on part of the contestants that the administratrix has failed to account for all the assets of the estate, but such claim is not sustained by the evidence. Decedent was married to the administratrix, his second wife, in 1872. He was then 50 years of age, actively engaged in business, apparently financially prosperous; and during the succeeding years he accumulated property to a considerable extent. For a year or more immediately preceding his decease he was incompetent, in consequence of ill health, and the administratrix assumed the general control of his business affairs, and the estate, for reasons not fully explained, has greatly decreased in value; but there is absolutely

no proof which would justify charging the administratrix with any other assets than those accounted for by her.

The account filed contains Schedule C, showing funeral expenses and disbursements of administration, and Schedule D, showing the debts of the decedent actually paid by the administratrix; and no substantial controversy arises in regard to the items thereof. The account also contains Schedule E preceded by the following explanation:

"A statement of all claims presented to me against said estate, which remain unpaid, together with the names of the claimants, the general nature of the claims, and the amount of each."

In this schedule is set forth an itemized statement of the personal claim of the administratrix for taxes paid by her upon the real estate of the decedent and for moneys expended by her for miscellaneous expenses prior to decedent's death, to the amount of $451.66. She subsequently filed a supplemental personal claim to the amount of $2,-759.98 for premiums paid by her upon two life insurance policies upon the life of decedent. This schedule also contained an itemized statement of the claim of Chloe Brown and of Olive Brown, two daughters of decedent, for $135.60 and $599.45, respectively, for moneys alleged to have been expended by them in the support and maintenance of the family for several years preceding the death of decedent. The controversy upon this accounting relates to these claims.

The daughters' claims will first be considered; and, as the facts are the same in regard to both, they will be considered together. It appears from the evidence that these claims were never formally presented to the administratrix by written statement, verified or otherwise; nor does it appear that either of the daughters has ever demanded or requested payment of her claim. The only recognition of either, in the course of administration, is the statement in Schedule E in relation thereto.

It is contended, on the part of the claimants and of the administratrix, that such recognition of these claims constitutes an allowance of the same, obviates the necessity of any formal presentation, and renders them liquidated demands against the estate, and that the burden of disproving them is upon the contestants. On the part of the contestants it is asserted that these claims are invalid, that they have never been presented to or paid by the administratrix, that they have not become prima facie liquidated demands, and, no consent having been filed under the provisions of section 2718 of the Code of Civil Procedure, that there is no jurisdiction upon this accounting to adjudicate upon the merits of the claims.

The Surrogate's Court has jurisdiction upon an accounting to determine whether or not a claim has been presented to and paid by the representative; but, if a claim has not been allowed within the legal signification of the term, and is disputed, no jurisdiction on the part of the Surrogate's Court exists without the filing of the consent provided for by the statute. The law is well settled that, where a claim has been properly presented, allowed, and paid by the representative, the production of the proper voucher for such payment upon judicial settlement makes a prima facie case for the representative, and the

burden of disproving such claim is upon the contestant. Matter of Frazer, 92 N. Y. 247; Matter of Stevenson, 86 Hun, 327, 33 N. Y. Supp. 493; Boughton v. Flint, 74 N. Y. 476. In the case last cited, Rapallo, J., says:

"The accounting party is not bound to establish payments for which he presents vouchers, unless they are denied by objections; and the burden of impeaching such payments is on the contestant."

In such a case the Surrogate's Court has jurisdiction to determine the controversy; but this rule has no application to a claim which has never been presented to, allowed, or paid by the representative, but which the representative, of his own volition, incorporates in the schedule of unpaid debts.

The personal representative of an estate is a trustee of the assets for the benefit of creditors and distributees. The rights of creditors, being prior to those of next of kin or legatees, the first duty of the representative is to ascertain and liquidate the indebtedness. The statute provides an expeditious and satisfactory mode of procedure in developing the indebtedness. Code Civ. Proc. § 2718. The terms "presentation" and "allowance" of claims in connection with administration are not mere vague and shadowy expressions. They each have a well-defined legal signification. The representative, in passing upon the validity of claims against the estate, acts in a quasi judicial capacity. He should have some basis for such action other than assumed personal information. The basis contemplated by the statute is afforded by the claimant presenting to the representative a written statement of his demand, showing the amount and what it is for. The representative may require such statement to be verified. The rule in this regard is well stated in Matter of Morton, 7 Misc. Rep. 343, 28 N. Y. Supp. 82. The court says:

"The administrator's knowledge of the existence of a claim against the estate does not avoid the necessity for due presentation. The statute plainly intends that the claim shall be presented or exhibited in some writing, stating the nature and amount, the owner's name, and demanding its payment. The personal representative of the estate is then in possession of the information which will enable him to act intelligently, and either to admit the claim, or to take steps to protect the estate against it. This is the construction placed on the statute by the courts of this state and of other states in whose statutes similar provisions and regulations are found."

In Niles v. Crocker, 88 Hun, 315, 34 N. Y. Supp. 761, the rule enunciated in the Morton Case is cited, approved, and applied. In Ulster County Savings Inst. v. Young, 161 N. Y. 33, 55 N. E. 485, Martin, J., says:

"The almost universal practice in presenting claims to representatives of an estate, to public officers, or to public boards, whether executors, administrators, assignees, receivers, supervisors, aldermen, or auditors, has been to present them in writing, properly verified. In many of the instances mentioned this is specially required. In this case there is no such explicit requirement; but the language of the statute clearly indicates that the claim exhibited must be in writing. Public policy and certainty in the administration of estates also require the enforcement of that rule. Otherwise, an opportunity is at once presented for an unscrupulous or dishonest representative to claim the benefit of this statute from some uncertain and inconclusive talk in regard to the

claim against the estate, which upon a trial may be transformed into an absolute demand and refusal, by perjury or a mistaken remembrance of the facts. In a matter so important we think that nothing short of a written claim exhibited to the representative, as the statute plainly requires, and absolutely rejected by him, will have the effect of establishing the time of the commencement of the limitation provided by the statute." Cruikshank v. Cruikshank, 9 How. Prac. 350; King v. Todd (Com. Pl.) 15 N. Y. Supp. 156; Robert v. Ditmas, 7 Wend. 523; Gansevoort v. Nelson, 6 Hill, 392.

Nor is the duty of the creditor fully performed upon due presentation of his claim. He should see that the representative takes some affirmative action in regard thereto. In Butler v. Johnson, 111 N. Y. 204, 18 N. E. 643, Andrews, C. J., says:

"In view of the power and duty of an executor or administrator, the inference from his silence, merely, of an agreement on his part to pay a debt so situated, would be unreasonable. The statutory system for the presentation and adjustment of claims against the estate of a decedent furnishes a summary and inexpensive method by which claims can be adjusted without action or by reference. The executor or administrator, on being satisfied of the justice of a claim presented, may admit it, or, if he doubts its justness, he may reject it and leave the creditor to his remedy by action if a reference is not agreed upon; but this presentation of a claim, the executor or administrator neither rejecting or admitting it, does not, we think, bind the estate as upon an account stated. It may be claimed that the executor or administrator ought, in the fair discharge of his duties, both to the creditor and the estate, to examine the claim within a reasonable time, and make known his position in respect to it; but it would be hazardous, in view of the ignorance and inexperience of the persons called upon to act as executors and administrators, to construe mere silence on his part as an admission that the claim was a valid one. The creditor must see to it that the claim is admitted and allowed by the executor or administrator, and an implied admission from silence is not sufficient."

Where the creditor properly presents his claim and procures the same to be allowed by the representative, he derives the advantage of having his claim thereby prima facie established as a liquidated demand against the estate; and if, under such conditions, the claim be paid by the representative, he has the full benefit of the rule enunciated in Boughton v. Flint, supra. If, however, the representative, ignoring the statutory procedure, substituting in place thereof his supposed personal knowledge of the claim, pays the same, he does so at his peril, and thereby assumes the burden of proof in case the validity of such claim is challenged. If, as in this case, his only affirmative action in regard to the claim is to incorporate it in the schedule of unpaid debts, he has not improved the status of the claim, because, upon objection being filed thereto, the Surrogate's Court is deprived of jurisdiction, and the claimant is remitted to his legal remedies to enforce the same.

The claims of Olive and Chloe Brown have not become liquidated or established against the estate; and, being disputed, no authority exists for their allowance upon this accounting. They must be disallowed, not upon their merits, but for want of jurisdiction to determine the same, without prejudice, however, to their right to resort to such legal remedies as they may desire to enforce the same.

The next subject for consideration is that portion of the personal claim of the administratrix which arises from her having paid premiums upon the life insurance policies of the decedent. It appears from

the evidence that the decedent, in his more prosperous days, procured two policies of insurance upon his life, in regular life insurance companies, for $5,000 each, in each of which the administratrix was named as the beneficiary. There came a time when the decedent himself failed to pay the premiums upon these policies and the administratrix began paying the same; and she continued so to do until such policies became matured by the death of the decedent. The administratrix received, as such beneficiary, the entire proceeds of these policies, amounting to $10,000. It does not appear from the evidence that the decedent ever requested the administratrix to pay these premiums, or that he ever promised to repay the same to her. Assuming that the fact of such payments having been made by the administratrix is satisfactorily established, do they establish a legal demand against the estate?

The equities of this demand are not easily discernible. It is difficult to understand upon what theory it can be contended that the next of kin ought to contribute from their distributive shares in the estate this sum of $2,759.98, the expense of maintaining the insurance upon the life of the decedent, which inured to the sole benefit of the administratrix to the extent of $10,000. The principle is rudimentary that, where one voluntarily pays the debt of another, without request or promise to repay on part of the original debtor, the amount so paid cannot be recovered. National Bank of Ballston Spa v. Supervisors, 106 N. Y. 488, 13 N. E. 439; Matter of Hotchkiss, 44 App. Div. 615, 60 N. Y. Supp. 168. In the case last cited, Goodrich, J., says:

" 'No person can make himself a creditor of another by voluntarily discharging a duty which belongs to that other to perform; and no debt can be implied in law from a voluntary payment of the debt of another.' Danforth, J., Nat. Bank of Ballston Spa v. Bd. of Suprs, 106 N. Y. 488, 494, 13 N. E. 439. In City of Albany v. McNamara, 117 N. Y. 168, 172, 22 N. E. 931, 932, 6 L. R. A. 212, the court said: 'It is an elementary principle in such actions that money voluntarily paid out by one for another cannot be recovered back.' "

The payment of these premiums by the administratrix does not even reach the dignity of a voluntary payment. By taking these insurance policies the decedent did not become a debtor of the insurance companies. The agreement as evidenced by the policies was to the effect that, if the premiums were paid year by year as therein provided, then the beneficiary named in the policy should be entitled to the benefit; if not paid, then such protection should fail. The payment of the annual premiums effected a renewal of the contract for the year following such payment. There was no legal obligation on the part of the decedent, arising out of the marital relation, to procure and maintain this insurance for the benefit of his wife. If at any time he determined to permit these policies to lapse by nonpayment of the premiums, he violated none of the legal rights of the wife. If from that time she assumed the burden of paying the premiums, she did so, not for the benefit of the decedent or his estate, but simply for the conservation of her individual interests. Nor is this condition changed by the possibility of her death prior to that of her husband. She assumed that hazard as an incident to her investment. A careful analysis of the facts disclosed by the evidence fails to disclose any conditions relieving these payments from the disability of being purely voluntary and made

ror the sole benefit of the widow herself. Her claim, so far as it relates to the premiums paid, is disallowed.

It appears from the evidence that, during several years immediately preceding decedent's death, taxes were levied upon real estate owned by him and not paid by him. They were paid by the administratrix from her individual funds. It does not appear that such payments were made at the request of the decedent, nor under any express promise on his part to repay the same; and it is contended in opposition to this portion of the claim that such payments were purely voluntary, and that, under the authorities above cited, she cannot recover. Such contention is not sustained by any equitable considerations. While the widow had an inchoate right of dower in the lands against which such taxes were assessed, yet the payment of the taxes was largely for the benefit of the entire estate. Under such conditions she ought to be protected—if upon no other grounds, then upon the principle of subrogation. Pease v. Egan, 131 N. Y. 263, 30 N. E. 102; Cole v. Malcolm, 66 N. Y. 363.

For several years preceding decedent's death, in consequence of his infirmities, the administratrix had to a considerable extent the management and control of his business affairs. In many instances she attended to the collection of outstanding obligations due decedent, and expended portions of the proceeds therefrom in the support of the family. From the 26th day of May, 1901, down to the date of the decedent's death, she contributed from her individual means to the payment of such expenses. The disbursements incurred by her in this line are fully detailed in Schedule E of her account. The daughter Chloe testified that upon several occasions she heard the decedent say to the administratrix, in substance, that his money was all gone, or nearly so, and that she and the girls (Chloe and Olive) would have to take care of him in his old age, and that she should keep an account of it, and it would all be paid back out of the estate. This evidence was offered solely in relation to the claim of the administratrix, and not as bearing upon the claim of the witness.

The claim of the administratrix, so far as it consists of moneys expended by her from her individual funds for the maintenance of the family, should be sustained. Cromwell v. Benjamin, 41 Barb. 558; Arnold v. Allen, 9 Daly, 198; Langbein v. Schneider (D. C.) 16 N. Y. Supp. 943; Keller v. Phillips, 39 N. Y. 351; Hatch v. Leonard, 165 N. Y. 435, 59 N. E. 270; Wanamaker v. Weaver, 176 N. Y. 75, 68 N. E. 135, 65 L. R. A. 529, 98 Am. St. Rep. 621.

The disposition of the other minor subjects in controversy fully appears from the findings of fact and conclusions of law filed in connection herewith.

Decreed accordingly.