In the Matter of the Estate of JOHN B. SCHORER, Deceased.

Surrogate's Court, Monroe County, January 11, 1935.

*Van Alstyne & Adams* [*H. R. Glynn* of counsel], for the claimant.
*Truesdale, Clarke & Taylor,* for the executor.

FEELY, S.   Upon rejection of a timely presented, verified claim on an oral contract for services to this testator, the attorneys for the respective parties agreed that the matter should stand awhile, and when the executor was prepared to settle his accounts, this claim would be tried out before the surrogate.   Aside from claimant's attorney serving, with the claim, a notice of retainer and appearance, nothing further was done by either party until the time, over seven and a half years after the claim had accrued, when the claimant filed a petition to compel the executor to account.   The latter then moved to dismiss the petition on the preliminary ground that meantime the claim had outlawed; and the reply was the claimant had done all that was necessary, and was waiting, as agreed, for the court's appointed liquidator to bring on the liquidation for final settlement.

Amid a conflict in the opinions, it seems the decision of this question should depend upon two cognate factors: (1) Whether the general application of the Statute of Limitations is specially modified by the command of the Surrogate's Court Act that a rejected claim, if not sued in a jury forum within three months of rejection, " *shall* be tried and determined at judicial settlement " (Surr. Ct. Act, § 211); and (2) if not so modified, then whether by the service of the verified claim on the one who is acting under letters of continuing authority from the Surrogate's Court to liquidate the estate of this testator, this claim for such relief was thereby " *actually interposed* by the party   *   *   *   in the particular   *   *   *   special proceeding," within the meaning of section 11 of the Civil Practice Act; for if it was, such presentation fixed the time to which the period of limitation is computed, and becomes equivalently the commencement of a special proceeding thereon in the general liquidation.

The language of section 11 hardly needs comment. To " interpose " a claim or defense is to set it up " or insist upon it in any manner at any stage of the action " or proceeding. (*Rosa* v. *Butterfield*, 33 N. Y. 665, 667.) "A proceeding in the ' enforcement of a civil right is an act necessary to be done in order to attain a given end. It is a prescribed mode of action for carrying into effect a legal right." (*Tyler Co.* v. *Rebic*, 118 Ohio St. 522; 161 N. E. 790; see *Morewood* v. *Hollister*, 6 N. Y. 309, 319.) Obviously, serving a claim on a court's appointed liquidator — whether he be an executor or administrator, a receiver, assignee, or trustee in bankruptcy — is an intervention by the claimant in that particular liquidation. When such official liquidator comes to render to the court the account of his stewardship as such, the owner of the rejected claim is a necessary party. (Surr. Ct. Act, § 262, subd. 1.) The judicial settlement itself is only the ending of the main proceeding that was begun by the filing of the petition (Surr. Ct. Act, § 48) for the issuance of letters. The State, by the issuance of letters of authority to liquidate in its name, undertook to enable the dead man to " project his individuality, his grasp, and his desires, beyond the grave, and make them effective " (28 R. C. L. 69), and finally to wind up his affairs. To this end the initial letters are a continuing authority to carry such a proceeding through all its intermediate stages. Even after the " estate " in liquidation has all been wound up, this authority may still remain in force until the letters have been explicitly revoked. (Jessup-Redf. Surr. [1925 ed.] § 1212.) This feature of letters underlies the general rule that " unrepresented estates are, under strict rules of law, unaffected by statutes of prescription or limitation." (17 R. C. L. 707.) No court can shut its doors in the face of a claimant against property the liquidation of which can be begun only by the court itself, through its appointee; nor should its appointee try to shut the doors in the face of an intervening claimant whom he has asked to await the convenience of the general liquidation. Our statutes (Civ. Prac. Act, §§ 20–23) do, indeed, prescribe some limitations with the object of not freeing the claimant altogether from any duty of vigilance in the premises. The main burden, however, is on the court's appointed liquidator, for, as Mr. H. W. Jessup observes: " The new scheme bears a trifle hard on the accountant." (Jessup-Redf. Surr. [1930] p. 1663.) " The personal representative of an estate is a trustee of the assets for the benefit of creditors and distributees. * * * The representative, in passing upon the validity of claims * * * acts in a *quasi* judicial capacity." (*Matter of Brown*, 60 Misc. 35, 39.) If after fifteen months from the time such power was delegated to him, the liquidator has omitted

to account to the court for what he has done under its letters, the duty then rests on the surrogate to note the omission; and the statute further declares the surrogate may then, of his own motion, order his appointed agent to account. (Surr. Ct. Act, § 257-a.) The official or juridical character of any modern decedent estate liquidation cannot be left out of the consideration of any phase or stage in it.

It would seem, therefore, that from the time the Surrogate's Court entertained the liquidation and issued letters of continuing authority to liquidate, until such letters were revoked, or its agent and appointee discharged, the liquidation of an estate was a proceeding by and before that court, wherein a " proceeding within a special proceeding " (Civ. Prac. Act, § 10, subd. 2) was begun by the claimant intervening and " actually interposing " his demand for relief, which raised an issue to be tried out at the termination of the whole liquidation at judicial settlement when the liquidator had become ready to bring all the assets and the parties before the court, by a special petition.

The claim became an incidental action in the general proceeding. Once such an intermediate proceeding has been begun by the claimant intervening, there is no time limit on its duration, except that in certain cases a new action can be brought within one year after a reversal or termination other than on the merits, or by an order of dismissal for laches. (Civ. Prac. Act, § 23.) A motion to dismiss for laches would ordinarily be brought by the representative; and to some extent the statute implies such to be his duty, rather than that one claimant among many should force a possibly premature closing of the general liquidation.

The timely intervention of the claimant in the general liquidation tolled the Statute of Limitations. It would be a narrow and unjustly technical view to hold that the claimant did not " actually interpose " his demand for relief therein until he filed a petition to compel the pending liquidation to be wound up, or to hold that the judicial settlement was not the winding up of the existing liquidation begun by the issuance of letters to liquidate, but was an isolated proceeding that was entirely new and independent of the letters of authority to liquidate the estate of the decedent debtor.

There are some analogous holdings in other fields. In 1806 it was held that the exhibition of a claim of a creditor against an absent or absconding debtor to his trustees is equivalent to the commencement of a suit against the debtor so as to prevent the statute of limitations attaching. (*Peck* v. *Randall's Trustees,* 1 Johns. 165.) So, it has been held that the filing of a claim by a junior mortgagee to surplus moneys in foreclosure of the first

mortgage is the commencement of a proceeding, and preserves the lien of the mortgage thereon. (*Allerwan Co.* v. *Herrmann,* 237 App. Div. 900.)

Obviously, the filing of a petition is deemed the commencement of a special proceeding (*Donovan* v. *Flynn,* 219 App. Div. 471); but the mere entry of an order of reference, on the stipulation commonly embodied in rejection of a claim under the old practice, was held to be the commencement of an action sufficient to stop the running of the limitation, even though no petition had been filed. (*Leahy* v. *Campbell,* [1902] 70 App. Div. 127; *Hultslander* v. *Thompson,* [1875] 5 Hun, 348; *Bucklin* v. *Chapin,* [1868] 1 Lans. 443.) The fallacy in the argument that a claimant against the estate of a decedent could not begin a " proceeding," except by filing a petition for judicial settlement, lies first in the assumption that the judicially authorized liquidation proceeding was not already pending when he intervened with his claim; and second in the failure to take into account the well-established practice that makes the rejection of the claim constitute the " joinder of issue " to be tried by the surrogate.

To regard the intervention of the claimant as a joinder of issue has long been the established practice of this locality. This was mentioned obiter in *Matter of Thompson* (149 Misc. 899) when this court said that although " claimant's verified claim   *   *   * has been held to be a ' mere formal notice ' (*Matter of Michelsen,* 148 Misc. 753), which, strictly speaking, cannot be called a ' pleading.' (Id.) It is, however, often regarded, together with the rejection, as practically outlining the issue to be tried on judicial settlement." Since 1895 the service of the claim and its rejection have been jurisdictional. (Heaton Surr. [1st ed.] 737, 743.) It is this idea of intervention and joinder that underlies the modification of the limitation applicable to claims against a decedent's estate.

Generally speaking, the Statute of Limitations applies to any " special proceeding or any proceeding therein " (Civ. Prac. Act, § 10, subd. 2); and this definition, or inclusion, applies generally to proceedings of those sorts, whether main or incidental, taken in Surrogate's Court (Surr. Ct. Act, § 316), except as this general rule has been specially modified by the special provision of the Surrogate's Court Act (§ 211) to the effect that if any rejected claim be not, within three months of its rejection, made the basis of an " action," it " shall be tried and determined upon the judicial settlement." Opinions differ on the mandatory effect of this new (1914) phrase, " *shall* be tried," etc. Some take a strict, technical view that does not appear to have taken into account the historical development of the present section, and the practical interpretation placed upon it by the bar.

In *Matter of Whitcher* ([June, 1930] 230 App. Div. 239) the court was unanimous in its decision that the surrogate erred in computing the period at less than the six years immediately preceding the debtor's death. Four judges concurred in the opinion that the notice of claim began the proceeding; but the dissenting opinion places its vote rather on the point of estoppel, based on the executors having lulled the claimant into insecurity. The majority opinion said: " The presentation of the claim thus instituted a proceeding which the claimant could prosecute, and has prosecuted, to final determination, in a court of competent jurisdiction. He is required to issue no other paper or have any other paper issued on his behalf. After the claim is filed, the executor is called upon to accept or reject it, though no time for such action is prescribed. If the claim is rejected, the matter may then be brought before the surrogate and tried without pleadings other than the claim and the objection or answer of the executor.

" In my view, when this claim was filed a special proceeding was instituted and, under section 11 of the Civil Practice Act, the statute ceased to run against that proceeding. * * *

" Those cases [referring to ' action ' within three months] are not authority as to the running of the statute in respect to a proceeding to collect a claim which is filed with the executor and is prosecuted, as in this case, in the Surrogate's Court."

Section 211 of the Surrogate's Court Act " makes a short Statute of Limitations against an action brought in another court, but it recognizes that if the claim is presented in Surrogate's Court, no statute of limitation applies."

The dissenting opinion refers to the judicial settlement proceeding as follows: " This proceeding was commenced by filing the petition for compulsory accounting, (Surr. Ct. Act, § 260), and not by the rejection of the claim by the executor.

" The petition and the proceedings set in motion thereby required a court of competent jurisdiction to judge between the two litigants and to make a decision and a decree which could be enforced in the same manner as the judgment of a court of general jurisdiction. Action is commenced by the delivery of a summons to the sheriff for service. * * *

" A strong argument can be made that the service of the claim on the representative of the estate is comparable with the service of a summons, and is the beginning of a proceeding in which ultimately the rights of the parties will be determined, but the authorities seem to be against this contention. (*Reynolds* v. *Collins*, 3 Hill, 36; *Schutz* v. *Morette*, 146 N. Y. 137; *Matter of Rogers*, 153 id. 316, 322.)

"However, the jurisdiction of the Surrogate's Court in respect of contested claims has been so radically changed and enlarged since these decisions as to weaken their logic."

Apropos of that radical change, it will be recalled that before 1914 a written claim, and a notice of its rejection, and a stipulation for its trial, were jurisdictionally prerequisite to enable the Surrogate's Court to try the disputed claim. Upon an unqualified rejection, the claimant, with whom no such stipulation had been made, had to sue elsewhere within six months. The Code then contained the broad drastic provision that " in default whereof [*i. e.*, action in six months], he, and all persons claiming under him, are forever barred from maintaining such an action thereupon, *and from every other remedy to enforce payment thereof out of the decedent's property*." (Code Civ. Proc. § 1822.)

The revision of 1914 omitted the executor's offer to refer, the claimant's consent, and the drastic limitation that destroyed " every other remedy;" and instead of all that, the revision made trial at judicial settlement a matter of right, not dependent on consent or stipulation. It thus gave the claimant two remedies, at his option. This great change in the claimant's favor has rendered obsolete the ruling, under the former statute, that even if a presented claim were allowed, it would become barred by the lapse of the appropriate period, as extended, from its maturity, notwithstanding the admission thereof by the representative of the estate (*Butler* v. *Johnson*, [1888] 111 N. Y. 204, and *Matter of Nelson*, [1909] 63 Misc. 627); for such was clearly the aim of the old statute.

Allowance and rejection are alike in respect of each being an intervention into the pending liquidation; and also in respect of the Statute of Limitations, except in this detail, that rejection being the beginning of a contest tolls the statute at once; whereas the allowance, in the absence of fraud or collusion, establishes the validity of the claim as effectively as a judgment against the representative (*Matter of Nelson, supra*); and shifts the burden; and so, where an allowed claim is successfully contested by the distributees at the windup of the liquidation, the limitation cannot include the time between the representative's allowance of the claim and the surrogate's determination of the objection to it. (Surr. Ct. Act, § 210.) But that the representative's action does affect the limitation is clear, no matter which way he decides. His mere silence or inaction is not an allowance, especially of an outlawed claim. His inaction may suspend the limitation until judicial settlement, in view of the option given the claimant by the present statute. No ruling has been found which, under the present statutory scheme,

limits the time in which a wind up of the liquidation can be either compelled or begun. Under the old statute, it was held that no limitation began until an administratrix had publicly and definitely renounced her trust as such. (*Matter of Taylor*, 30 App. Div. 213.) On a pending proceeding there is no limitation, except possibly, " the lapse of a great time."

The dissenting opinion in the *Whitcher* case, therefore, is correct in admitting that the changes made by the revision of 1914 have weakened the present application of decisions predicated on the preceding practice. The attention of the court in the *Whitcher* case was not directed to an apparently opposed ruling that had been made a year before in *Matter of Deitz* ([June, 1929] 134 Misc. 393). In this *Deitz* case a daughter filed a claim, on a presumably ordinary account against her father, with her mother as his executor; but notwithstanding its rejection, she did not disturb her mother, in the latter's declining years, with prosecution of the claim. After the mother died, the latter's executors presented their account of the mother's estate; and the daughter objected that the father's estate was still open, and was owing the mother's estate. It was held the daughter had no standing to object in the mother's estate, because she had not brought any action, nor moved to compel a settlement of her father's estate, during the period from the presentation of her claim in 1921 to the accounting proceeding in the mother's estate in 1928. As to the right of action within three months after rejection, the surrogate there wrote: " The fact that she failed to exercise this option in no way alters the nature of her claim, but merely amounts to a stipulation to the effect that her legal claim should be determined by the surrogate sitting as a court of law.

" To bring about such determination, it was obviously essential that one or the other party should move the matter for hearing. The executrix against whom the claim was asserted, like many another defendant or quasi-defendant, did not see fit to do so. The law gave the claimant a clear right to do this herself. She has sat by idly until after the expiration of the period within which the law permits such claims to be prosecuted, and her rights, if she ever had any, are now barred." (*Matter of Deitz, supra.*)

The word " stipulation " here seems to echo the obsolete formula that the executor " doubts the justice of the claim and offers to refer," and " the claimant consents," etc. The absence in the *Deitz* case of any express stipulation to try out the issue at judicial settlement, as was stipulated in the case at bar, is one feature that appears to distinguish the *Deitz* case from the present one. Where such a stipulation is present, the executor's delay has a bearing

on his good faith in setting up afterward the bar of the statute. The holder of an unrejected claim is held to be justified in assuming no final decree settling the representative's accounts and distributing the estate will be made without notice to him; and that in such case the Statute of Limitations cannot be used by the representative as a shield against his own fraud. (*Matter of Gall*, 182 N. Y. 270; *Matter of Williams*, 121 Misc. 54; *Matter of Prince*, 56 id. 222, 228; *Matter of Miles*, 170 N. Y. 75.)

Aside from the *Deitz* case, there is one other modern case that contains obiter statements apparently in conflict with the majority opinion in the *Whitcher* case, namely, *Matter of Michelson* (148 Misc. 753). There the representative filed his account, and to it objections were filed that were claimed to constitute " causes of action; " and a bill of particulars was sought. Considered with reference to the fact that no one questioned this was a joinder of issue (See *Matter of Kilborn*, 232 App. Div. 580, 582), there was no necessity for the court to say also that there could be no other joinder of issue in any case. The following broad remarks of the court, therefore, seem quite obiter, that " no issue is raised until the petition for an accounting and an account have been filed by the representative, and objections have been filed thereto by the claimant. * * * Ordinarily there is not even a proceeding pending at the time of the presentation of the claim." Even on the assumption in the last sentence of the foregoing quotation, it may be asked, if the rejecting executor move first and file a petition and account wherein he sets out the rejected claim, describes it as outlawed, and cites the claimant, as he must, is the claimant, then appearing, to be deemed to be in default in pleading if he fails to serve an answer admitting that his claim was rejected and demanding judgment thereon notwithstanding? Even under the former practice, the rejecting executor after having offered to refer, was not obliged to file an answer. (*Eldred* v. *Eames*, 115 N. Y. 401, 403.) No such refinements are found in actual practice in this locality. The claim and its rejection are commonly recognized as the joinder of issue, which " shall be tried and determined upon judicial settlement," under the statute (Surr. Ct. Act, § 211); and they probably will continue to be so considered until either the Legislature prescribes further steps to be taken by the claimant beyond those he is now obliged to take, or until judicial interpretation reaches the same result.

The learned surrogate who wrote in the *Deitz* case has since had occasion to refer to the *Whitcher* case, in connection with the rule as to judgments. In the old practice, and in two cases since 1914, in which it has been followed, without stopping to consider

the effect of the revision on it, the ruling seems to have been that a judgment imports truth and indebtedness absolutely, and cannot be " rejected " by a legal representative; and when twenty years have elapsed after it has been docketed, the statute attaches a conclusive presumption of payment that then necessitates its rejection. Moreover, as this statute was framed, the eighteen months' extension was held not to apply. In most of those cases the claim was on a judgment over ten years old, which was presented before the twenty years had elapsed; and the matter was then brought before the surrogate after the latter period had ended. The basis of the ruling is the statutory conclusiveness of the presumption of its having been paid at the time it was brought before the surrogate. The " actual interposition " of it by filing the claim was not regarded as a decisive factor in this line of ruling, which was based on the obsolete statutory policy described above. By reason also of the further statutory differences involved in the concept of a judgment, as distinct from a simple claim like the one at bar, the rule as to judgments in respect of the immateriality of the date of the service of the claim does not apply to the instant case, except possibly by analogy. This seems to have been recognized in the latest of the two cases applying, since 1914, this special ruling as to judgments, for in *Matter of Amarante* ([1933] 148 Misc. 825) the learned surrogate, who had decided the *Deitz* case, referred to the *Whitcher* case thus: " The decision of the Appellate Division for the Third Department in *Matter of Whitcher* (230 App. Div. 239) is not in point as the claim involved did not concern a judgment debt but a claim on quasi-contract concerning which other considerations prevail. (*Brinkman* v. *Cram*, 175 App. Div. 372, 373.) " The case last cited deals with the equity aspects of a claim on a judgment. In non-judgment cases, therefore, the question seems to be still open as to whether the service of the claim now tolls the statute.

Finally, the matter comes down to this: on the one hand the view is taken that the " estate " is an official liquidation proceeding, and the service of the claim an intervention therein, which upon rejection becomes a joinder of issue that the statute requires to be tried out at the windup of the liquidation; but on the other hand the view is taken that there is no proceeding pending until some one files a petition for judicial settlement; and that the claim is a mere preliminary notice; and that formal joinder of issue must be made in the judicial settlement proceeding, or else the claimant is in default even though he appear; and that if between the accrual of the claim on simple contract and the filing of the petition more than seven and a half years have elapsed, the statute requires

the executor to plead the Statute of Limitations; and the claimant is then outlawed.

As between the two opinions, that of the majority in the *Whitcher* case seems preferable to the others; and my conclusion is that the service of the claim and its quasi-judicial rejection as aforesaid together constituted the joinder of an issue on the claimant's interposition of his demand by intervening in the official liquidation that is still pending and unsettled; and that this intervention and joinder of issue tolled the statute while that issue stood awaiting trial therein, especially under the stipulation for trial when the executor was prepared to bring on his judicial settlement thereof; and that even had there been no such stipulation herein the result would have been the same under the command of the statute that the issue so joined should be tried out at judicial settlement as a matter of right.

The respondent executor's motion to dismiss the special petition filed by the claimant herein to compel judicial settlement, on the ground that the claim had outlawed before said petition was filed, is, therefore, without merit.

Enter an order in accord with this decision, denying this preliminary motion, with motion costs, and providing for trial of the facts on a day to be fixed on the submission of the order after hearing counsel as to their appointments, said date to be inserted in the order.