In the Matter of the Accounting of WALTER A. HAMMER, as Administrator C. T. A. of the Estate of HERMAN J. MEYERING. Deceased.

Surrogate's Court, Monroe County, February 23, 1945.

*G. C. Gordon* for administrator *c. t. a.*

*J. F. Colson* for claimant.

*J. P. Brennan* for legatee.

FEELY, S. On the judicial settlement of this estate a preliminary question was presented as to whether or not the claim hereinafter mentioned was barred by lapse of time. The facts are not disputed. On September 19, 1936, testator as maker signed two (unindorsed) promissory notes, each for $250 and interest, payable four months from date, which by the payee's endorsements passed to the present holder and owner, the Union Banking & Trust Co. of Dubois, Pa. Testator never paid any part of said obligations; nor is there any writing shown either acknowledging the debt, or making any new promise to pay it. Testator died here August 20, 1942, and letters with will annexed were issued by this court on October 16, 1942. By reason of the maker's death within the six years' period, the Statute of Limitations extended the usual period of six years to seven years and a half. This extended period, computed from the date of payment specified in the notes, expired July 19, 1944.

The question is whether by that date the claim was " actually interposed by the party as plaintiff * * * in the particular action or special proceeding " (Civ. Prac. Act, § 11). Both before and since the revision of surrogate practice in 1914 the proper method of actually interposing a claim on decedent's estate was and is to make a demand for it on the executor or administrator. Mr. Warren states: " It is very desirable if not essential that the claim should be presented in writing stating its nature and amount and demanding its payment " (3 Warren's Heaton on Surrogates' Courts, § 270, subd. 2, par. [a]).

This is especially important because such demand has repeatedly been held in surrogate practice to be " tantamount to the due service of a summons and complaint in a Supreme Court action " (*Matter of Wood*, 170 Misc. 752, 753; *Matter of McGowan*, 174 Misc. 928; *Matter of Schorer*, 154 Misc. 198, affd. 248 App. Div. 666, affd. 272 N. Y. 247). Although, generally, the demand need not be in any particular form (*Matter of Wood, supra; Matter of Craven*, 171 Misc. 825; *Matter of Schorer, supra*), the statutes both before and since the revision have declared that " The executor * * * may require satisfactory vouchers in support of any claim presented and the affidavit of the claimant that the claim is justly due, that no payments have been made thereon, and that there are no offsets against the same to the knowledge of the claimant " (Surrogate's Ct. Act, § 207). In most cases, compliance with that requirement must be in the form of a writing. (*Ulster County Savings Inst.* v. *Young*, 161 N. Y. 23, 34.) In the present case

the administrator's attorney exercised that option by his letter to claimant's attorney, dated October 5, 1942 (Exhibit 4), wherein after referring to the general talks and letters as to a claim to be filed, he added: " I assume that you will in due course send us the usual verified claim.'' No such service on the administrator, or his attorney was made until November 15, 1944, by the letter of claimant's attorney (Exhibit 11) which was four months belated, and was legally ineffectual to lift the bar that had already fallen in July. This letter referred to an " affidavit " of claim verified October 8, 1942; and adds that a duplicate was filed in Surrogate's Court of Monroe County, N. Y. on November 9, 1942. No service of those papers was made on the administrator, or on his attorney. There is not any statute, or custom, requiring such claims to be filed with the Surrogate. Such filing in court is not a demand on the estate representative, nor is it any notice to him. The filing did not come to the knowledge of the representative until September 21, 1944. About a month before the duplicate was filed in court, the court had issued letters with will annexed to W. A. Hammer of this city. There is no reason given for claimant not having ascertained from the court record of letters that Mr. Hammer had authority to act for the estate. There is no evidence that Mr. Hammer could not, after due diligence, be served within the State.

It does appear that Mr. Hammer, who is a son-in-law and a business associate of the testator, was informed by telephone from claimant's office on November 9, 1942, they had a claim for collection from Mr. Meyering; in reply to which Mr. Hammer stated Mr. Meyering had died. Mr. Hammer also said he knew nothing of the facts and was surprised to learn of the notes, and referred the claimant's attorney to Mr. Dunbar, his attorney as administrator.

The possession of information by Mr. Dunbar, that there was some such claim, made it a prudent precaution to cite the claimant in this proceeding for the judicial settlement of the administrator's account in order to make the decree conclusive protection to the estate representative; but neither the possession of the information, nor the citing of the claimant, was a waiver of the right of the administrator to have a proper demand made on him by service on him or his attorney of a verified claim. Mr. Warren states: " It has been said that the representative's knowledge of the existence of a claim does not avoid the necessity of its due presentation. *Matter of Morton*, 7 Misc. 343, 28 N. Y. Supp. 82; *Niles* v. *Crocker*, 88 Hun 312, 34

N. Y. Supp. 761. This is undoubtedly true. The representative may require the claim to be presented in a formal manner even though he knows of its existence and all the facts regarding it.'' (3 Warren's Heaton on Surrogates' Courts, § 270, subd. 5.)

In the petition for judicial settlement the administrator *c. t. a.* alleges all claims against the estate have been paid, except the claim on the notes now in question, which '' has not been paid for the reason that it has not been served upon your petitioner or upon any person authorized by him in the circumstances to accept service thereof, and your petitioner believes that recovery thereon is barred by lapse of time.'' A similar statement is made in schedule H of the account filed herein. This did not amount to an allowance of the claim (*Matter of Brown,* 60 Misc. 35).

The inquiry is thus limited to considering whether the administrator or his attorney after October 1, 1942 (Exhibit 3), did anything to '' lull the claimant into a sense of false security ''. There being no suggestion of fraud of any sort, the Statute does not allow avoidance for mistake or lack of knowledge. A summary of the correspondence follows:

September 9, 1942: claimant's attorney phones Meyering's place of business, and is referred to the estate's attorney.

October 1, 1942: claimant asks for information as to the estate (Exhibit 3), and what arrangements, if any, can be made for liquidation of the claim.

October 5, 1942: estate attorney disclaims information of claim; says probate will be in ten days; and adds: '' I assume that you will in due course send us the usual verified claim '' (Exhibit 4). No such verified claim was served on the administrator or his attorney within the statutory period.

October 8, 1942: a claim is verified, but not filed, nor served on any one.

October 16, 1942: letters with will annexed issued.

November 5, 1942: '' affidavit '' of claim sworn to in Pennsylvania by bank's treasurer.

November 9, 1942: affidavit of November 5 filed in Surrogate's Court; but no copy ever served on any one.

June 19, 1943: claimant asks when estate is to be closed (Exhibit 5).

June 26, 1943:     estate replies closely held stock may keep estate open for considerable time, (Exhibit 6).

July 19, 1944:     extended period of time to begin action expired.

November 13, 1944: claimant asks for information; speaks (mistakenly) of Mr. Hammer as an indorser; and adds claimant " feels that Mr. Hammer should receive an allowance from the Meyering estate unless the Trust Company's note has been paid " (Exhibit 9).

November 14, 1944: estate replies that " on the accounting the position of the administrator C. T. A. will be that the claim is barred by lapse of time." (Exhibit 10.)

November 15, 1944: claimant mails proof of claim with notes attached; and refers to the duplicate of the claim as duly filed in Surrogate's Office on November 9, 1942, " as up to that time we did not know who the administrator C. T. A. would be ". (Exhibit 11.)

November 20, 1944: estate returns the notes, stating the claim will be rejected in due course, and one of the defenses will be the Statute of Limitations. (Exhibit 12.)

From the course of events it cannot be fairly inferred that the estate attorney did anything that would justify the claimant in delaying to send the estate attorney the verified claim required by the latter's letter of October 5, 1942 (Exhibit 4). On the contrary, no fairer treatment could be expected from an opponent than that afforded to the claimant by the letter of October 5, 1942 (Exhibit 4), written a year, nine months and a half before the bar of the statute could possibly have fallen, notifying the claimant that the estate representative would stand on his statutory right that " you will in due course send us the usual verified claim ". As soon as the belated attempt was made to comply with that requirement, the claim was promptly rejected as one that was barred by lapse of time. The estate representatives had only general information as to this claim. This was not a substitute for the sworn detail the estate had required, under the statute, to be served on its representative. Mr. Jessup states that the representative acts not only for the estate, but for all the creditors, and should require literal com-

pliance in these matters, because a waiver of technical rights in behalf of one might well be prejudicial to the rights of others. (Jessup-Redfield on Law and Practice in Surrogates' Courts [3d ed.], § 782a.) The Court of Appeals has said that "Public policy and certainty in administration of estates also require the enforcement of that rule", as to presentation to the estate representative of a claim in writing, with verification, (*Ulster County Savings Inst.* v. *Young,* 161 N. Y. 23, 33, *supra,* quoted in *Matter of Brown,* 60. Misc. 35, 39, *supra*). These reasons of policy underlie the rule both that the estate representative is bound to set up the Statute of Limitations, and also that the requirements of the statutes on the presentation of claims are rather strictly construed.

Thus in *Diehl* v. *Becker* (227 N. Y. 318) "The executor had advertised for claims. A conference was had between the claimant and the executor. Apparently the contract was produced. Its payment was discussed. A compromise, subject to the approval of the Surrogate, was arranged. On his refusal, a notice was prepared stating that the claim filed with the executors was rejected. As a matter of law we cannot say these facts show such a presentation as the statute requires." (P. 324.)

"We do not hold that where a note, signed by the deceased, is presented to the executor, and a demand made for its payment, anything more is essential. But the demand must be clear and decisive. A general conversation from which contrary inferences may be drawn as to whether a demand for immediate payment was or was not intended, or as to whether the executor should have understood that such a demand was made, is not enough." (Pp. 323–324.)

In this case the omission to serve the required verified claim on the estate representative in due time might be said to have left the claimant in much the same position as is a plaintiff who filed a notice of pendency, in some court other than that of the Surrogate, to the knowledge of the proposed defendant, but omitted to begin service of process within the time limit. Ordinarly, a delay beyond the sixty days invalidates the notice, just as a like omission to give process to an authorized server is ineffectual as an attempt to commence an action under the Statute of Limitations, or in surrogate practice (Surrogate's Ct. Act, § 48) an omission to serve process "upon the adverse party" within the time limited, assuming a petition had been filed in this court.

My conclusion is there is no way known to this court to save this claim from the necessary effect of the Statute. The claim must be dismissed simply as one barred by lapse of time.

On notice enter a decree in accord with this decision.